[No. 3035–2.   Division Two.   November 30, 1979.]

MAX ROSEN, ET AL, *Respondents*, v. THE CITY
OF TACOMA, *Appellant*.

*Robert R. Hamilton, City Attorney,* and *F. H. Chapin, Jr.,* and *Thomas Dempsey, Assistants,* for appellant.

*Richard J. Dolack* and *Barry N. Mesher,* for respondents.

SOULE, J.—The City of Tacoma appeals the judgment of the trial court awarding damages to the plaintiffs for the City's alleged arbitrary and capricious action in refusing to approve plaintiffs' plan to repair their apartment building. We find no liability as a matter of law and reverse the decision of the trial court.

On March 12, 1974, a windstorm damaged an apartment building owned by the plaintiffs located in the city of Tacoma. The storm caused a number of bricks from the upper portion of the south wall to fall off the building onto the streets and neighboring buildings. Plaintiffs hired Jardeen Brothers, a general contracting firm, to estimate repair costs. Jardeen Brothers initially recommended that all the brick veneer be removed from the building at an estimated cost of $24,000. Meanwhile, plaintiffs' insurance company determined that structural deterioration had been the cause of the damage and settled the claim for an amount well below this figure.

Jardeen Brothers hired Richard Johnston, a masonry subcontractor, to make additional suggestions. Johnston proposed a method of repairing the existing mortar by using steel plates and bolts to secure the remaining bricks to the building. As this method involved only the replacement of the bricks which had actually fallen off the building, the estimated repair cost was considerably less, approximately $1,500.[1] Jardeen Brothers proposed this less expensive solution to Jack Fabrey, a city building inspector,

---

[1] The proposal was not supported by engineering data. Johnston testified "I'm sure I didn't have it engineered. No way."

when he came to inspect the premises on March 21. Fabrey stated that this plan was not satisfactory and that, since the building was an immediate safety hazard, the city would require that all the brick veneer be removed and replaced or the city would initiate condemnation proceedings. This was confirmed in a letter of March 22, 1974, to Jardeens signed by the head of the City Building Division, Ronald Button. This letter read as follows:

Dear Mr. Jardeen:

This is to confirm to you that the brick veneer on the above subject building must be removed on all sides of the building.

If you, or the owner, need further information please contact this office.

Plaintiffs testified that they became "disgusted with the way the city was giving us a bad time" and, rather than pay the estimated $24,000 necessary to replace the entire veneer, elected to sell the building at a loss. Plaintiffs sold the building to Alex Candoo, a general contractor, in November 1974 and sustained a loss of over $12,000. In the meantime the City had issued a dangerous building complaint in October 1974. On November 18, 1974, the City Public Works Department entered an order declaring the structure a dangerous building and ordering that formal plans for repairs be presented to the department within 30 days of entry of the order.

Alex Candoo, the new owner, responded to the complaint and applied for a building permit to repair the building using essentially the same method suggested by Johnston. This application was supported by the appropriate engineering documentation as required by the building code.[2] The City approved this repair scheme and issued the

---

[2]Uniform Building Code (1973) adopted by ordinance No. 20208 of the City of Tacoma states in pertinent part:

"Sec. 301. (a) PERMITS REQUIRED. No person, firm, or corporation shall erect, construct, enlarge, alter, repair, move, improve, remove, convert, or demolish any building or structure in the city, or cause the same to be done, without first obtaining a separate building permit for each such building or structure from the Building Official.

building permit to Candoo on December 2, 1974. Plaintiffs never made a formal application for a building permit, nor did they respond to the dangerous building proceedings or go through any administrative channels other than authorizing Jardeen Brothers to talk with the building inspectors.

Plaintiffs sued the City in negligence seeking damages for the difference between the fair market value of the building prior to the storm and the selling price, adjusted for the amount necessary to repair the building according to Johnston's suggestion and for selling costs. The trial court found that the City's letter of March 22, 1974, was an arbitrary, capricious and negligent action that was the proximate cause of plaintiffs' economic loss and awarded over $10,000 in damages to the plaintiffs. The City appeals raising three issues: (1) Did the trial court err in finding that the letter of March 22, 1974, was an arbitrary, capricious and negligent action on the part of the City? (2) Did the City owe a duty to the plaintiffs? (3) Was the City's action the proximate cause of plaintiffs' economic loss?

The trial court found that the March 22 letter was an arbitrary, capricious and negligent action on the part of the City since the City later approved the same repair plan originally suggested by the plaintiffs' contractor. This issue is reduced to determining whether the March 22 letter was an unreasoning and arbitrary action upon which a reasonable property owner was entitled to rely and treat as final action on the part of the City.

---

"(b) APPLICATION. To obtain a permit the applicant shall first file an application therefor in writing on a form furnished for that purpose. Every such application shall:

"...

"4. Be accompanied by plans and specifications as required in Subsection (c) of this Section.

"(c) PLANS AND SPECIFICATIONS. With each application for a building permit, and when required by the Building Official for enforcement of any provisions of this Code, two sets of plans and specifications shall be submitted. The Building Official may require plans and specifications to be prepared and designed by an engineer or architect licensed by the state to practice as such."

■ It is clear that plaintiffs failed to pursue their administrative remedies and that from a purely legal standpoint the March 22 letter is not a final action. The Tacoma City Code authorizes the Director of Public Works to inspect damaged buildings, to hold hearings and to enter findings and repair orders in regard to them. Tacoma City Code § 2.01.040. Appeal from such an order is to the Board of Building Appeals. Tacoma City Code §§ 2.01.060, 2.17.020.[3] Building inspectors do not have authority under the city code to authorize such repairs when no repair plan has been formally submitted to the Public Works Department. No final action arises in the context of a building repair controversy until a building permit has been applied for and either issued or refused. *Cf. Department of Ecology v. Kirkland*, 84 Wn.2d 25, 523 P.2d 1181 (1974); *Renton Educ. Ass'n v. State Pub. Employment Relations Comm'n*, 24 Wn. App. 476, 603 P.2d 1271 (1979).

The mere fact that the City later approved the plan submitted formally by Alex Candoo, the new owner, does not mean that the March 22 letter was an arbitrary and capricious action on the part of the City. Candoo, himself a general contractor, testified that building inspectors and the

---

[3]*Tacoma City Code* § 2.01.060 provides:

"Appeals. Appeals from the decision and order of the Director of Public Works or his authorized representative rendered pursuant to this chapter shall be made to the Board of Building Appeals as established pursuant to Chapter 2.17 of the Official Code of the City of Tacoma, and shall be subject to the rules and regulations and orders to the same extent and in the same manner as other appeals coming before such body."

Tacoma City Code § 2.17.020 provides in part:

"Duties. The Board of Building Appeals shall:

"A. Determine the suitability of alternate materials and methods of construction pertaining to the building, plumbing, mechanical, elevator, and fire codes of the City of Tacoma; . . ."

Tacoma City Code § 2.17.030 provides in part:

"Hearings—Procedures. A. An aggrieved *party in interest* may appeal to the Board of Building Appeals a decision and order of the Director of Public Works, or his duly *authorized representative*, or of the Chief of the Fire Department, or his duly authorized representative, by filing with the City Clerk within thirty days from the date of service of the said decision or order a notice of appeal." (Italics ours.)

Building Division staff often reject initial repair proposals but usually become more receptive to such proposals as the proceedings progress. Presumably, Jardeen Brothers was also privy to such information which it could have relayed to plaintiffs. The initial rejection of the repair plan by the on–site building inspector and the later acceptance of such a repair scheme after formal proceedings have been pursued does not mean that the initial rejection is arbitrary and capricious. On the contrary, it would appear logical for the city officials to hesitate initially to approve a limited repair plan when their immediate concern is to protect citizens from dangers associated with falling bricks; it is also logical for the City to accept essentially the same repair plan after proper engineering documents have been formally presented to the Public Works Department which provide assurance that the repair plan is adequate to protect public safety. We hold that the March 22 letter was not a final action on the part of the City and that it was not arbitrary and capricious. Further, even if it could be found that the letter would induce reliance on the part of a reasonable property owner that it was a final order by the City, the plaintiffs still failed to pursue the appeals procedures set forth in section 2.17.010 *et seq.* of the Tacoma City Code.

▇▇▇▇ The City argues next that as a matter of law it owed no duty to the plaintiffs. A municipality does have a duty to handle applications for building permits in a manner which is not arbitrary and capricious. *See King v. Seattle,* 84 Wn.2d 239, 248, 525 P.2d 228 (1974). However, we have already determined that the City did not act in an arbitrary and capricious manner. No other duty was owed to the plaintiffs by the City, and no duty toward the plaintiffs arises out of the dangerous building provisions of the Tacoma City Code. A municipality does not owe a legal duty to individuals for actions arising out of general health and safety ordinances unless the ordinance evidences a

clear intent to identify a particular class of persons coming within the protection of the ordinance. *Baerlein v. State,* 92 Wn.2d 229, 231–32, 595 P.2d 930 (1979); *Halvorson v. Dahl,* 89 Wn.2d 673, 676, 574 P.2d 1190 (1978). *See also* 18 E. McQuillin, *Municipal Corporations* § 53.04b (1977). The section of the Tacoma City Code relating to dangerous buildings is a general health and safety ordinance, not one directed to protecting property owners from economic loss, *see* Tacoma City Code § 2.01.010 *et seq.,* and the general purpose of building code permits and inspection ordinances is to protect the safety of the public not to protect individuals from economic loss due to the municipality's alleged negligence in issuing such permits. *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976). Since there is no specific duty owed to the plaintiffs, they have no cause of action against the City in negligence.

■ Finally, the City argues that, even assuming the existence of a duty toward the plaintiffs and the City's breach of that duty by issuance of the March 22 letter, this alleged arbitrary and capricious action cannot be the proximate cause of plaintiffs' economic loss. We agree with this contention. Proximate cause includes a determination of the limitations of legal liability as well as a determination of the cause–in–fact of the injury. *King v. Seattle, supra* at 249. Even arbitrary and capricious municipal action cannot be the basis for liability in tort for economic loss when the party suffering the loss fails to pursue available administrative remedies. *King v. Seattle, supra* at 251. Since plaintiffs failed to pursue these remedies, the alleged arbitrary and capricious action by the City in the March 22 letter cannot be the proximate cause of their economic loss.

We hold that the decision of the plaintiffs to sell their property at a loss instead of pursuing administrative remedies to obtain approval of their repair plan was merely a business decision for which the City has no legal liability.

The judgment of the trial court entered in favor of the plaintiffs is reversed.

PEARSON, C.J., and PETRIE, J., concur.