[No. 53817-4.   En Banc.   July 15, 1988.]

HARRY TAYLOR, ET AL, *Petitioners*, v. STEVENS COUNTY, ET AL, *Respondents*, AMERICAN PACIFIC REALTY, INC., ET AL, *Petitioners*.

*Helen Dee Hokom,* for petitioners Taylor.

*Lukins & Annis, P.S.,* by *Terence R. Whitten,* for petitioners American Pacific Realty, et al.

*Frederick J. Dullanty, Jr.,* and *Winston & Cashatt,* for respondents.

DORE, J.—We hold that Stevens County cannot be held liable for its alleged negligence in administering its building code. The duty to ensure that buildings comply with county and municipal building codes rests with individual builders, developers and permit applicants, not local government.

## FACTS

Plaintiffs Harry and Robin Taylor in 1981 purchased a house in Stevens County from Harry and Mary Murray with the assistance of realtor American Pacific Realty, Inc. The buyers claim that the sellers built the house without first obtaining a building permit. They claim that before the sale was completed they inquired and were assured by the realtor that a building permit would be obtained prior to closing.

On November 30, 1981, the sellers submitted a building permit application to Stevens County which indicated that the house was "unfinished". The realtor alleges that it prepared the building permit for the sellers. Before issuing a building permit, a county building inspector entered the following notation:

> The basic structure appeared to be of adequate construction although cosmetic considerations were somewhat lacking. Overall the bldg appeared to be average of what may be expected in this area.

Clerk's Papers, at 84. The County then issued a building permit on December 7, 1981.

On December 8, 1981, the buyers and the sellers entered into an "Executory Contract of Sale of Real Estate". The sales agreement noted that the house was not fully completed and the buyers acknowledged that they had examined the premises and accepted it "as is". By 1983, the buyers had discovered defects in the construction of their

house. At the buyers' request for inspection, a county building inspector found numerous violations of the county building code.

The buyers brought this action against the sellers, the realtor and the County. The sellers and the realtor cross–claimed against the County seeking indemnity should they be found liable to the buyers. On CR 12(b)(6) motions, the trial court dismissed the buyers' claim and the sellers' and the realtor's cross claims against the County. The Court of Appeals affirmed, *Taylor v. Stevens Cy.*, 47 Wn. App. 134, 142, 732 P.2d 517 (1987), whereafter we granted the buyers' and the realtor's petitions for discretionary review. We affirm.

STEVENS COUNTY BUILDING CODE

In 1974, the Legislature enacted the State Building Code Act, codified at RCW 19.27. Laws of 1974, 1st Ex. Sess., ch. 96, § 1, p. 212. The Act adopted by reference several nationally recognized uniform codes, including the Uniform Building Code. *See* RCW 19.27.031(1). The Act requires counties to adopt the enumerated codes, however, a county may amend the codes provided certain minimum performance standards and objectives are not diminished. *See* RCW 19.27.031 and .060(1).

In March 1980, Stevens County enacted ordinance 01–1980 adopting, with amendments, the 1979 edition of the Uniform Building Code. Under the Stevens County building code, a building permit is required before beginning construction of a house. Uniform Building Code § 301(a) (1979). It further provides that the permit application shall include plans, diagrams, computations and specifications of the proposed work. Uniform Building Code § 302(a)(4), (b).

As to the issuance of building permits, the code provides:

No building permit shall be issued to any applicant or person who fails to provide sufficient evidence of compliance with all laws and regulations relating to the use of

land and the construction or improvements of structures thereon.

Clerk's Papers, at 88; Stevens County Building Construction Code § 303(H). Where construction has commenced without first obtaining a building permit, a "special investigation" is required before a permit may be issued for such work. Clerk's Papers, at 89; Stevens County Building Construction Code § 304(E).

## PUBLIC DUTY DOCTRINE

In essence, the buyers and the realtor claim that the County was negligent for having issued the building permit because consummated plans, required by the county building code, did not accompany the permit application. They further allege that the County negligently performed the "special investigation" in that the inspector failed to discover that the house had not been built in compliance with the building code. The County denies liability, claiming that under the "public duty doctrine" it owed no duty to the buyers or the realtor.

The threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general. *J & B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 304, 669 P.2d 468, 41 A.L.R.4th 86 (1983). This basic principle of negligence law is expressed in the "public duty doctrine". Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.,* a duty to all is a duty to no one)." *J & B Dev. Co.,* at 303; *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 284, 669 P.2d 451, 39 A.L.R.4th 671 (1983); 18 E. McQuillin, *Municipal Corporations* § 53.04b (3d ed. 1984).

LEGISLATIVE INTENT

The public duty rule of nonliability does not apply where the Legislature enacts legislation for the protection of persons of the plaintiff's class. In *Halvorson v. Dahl,* 89 Wn.2d 673, 676, 574 P.2d 1190 (1978) we stated that "[l]iability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons." *See Baerlein v. State,* 92 Wn.2d 229, 231–32, 595 P.2d 930 (1979); *see also* 1A C. Antieau, *Municipal Corporation Law* § 11.32 (1987).

■ The purpose section of the State Building Code Act, RCW 19.27, in pertinent part provided:

> The purpose of this chapter is to provide building codes throughout the state. This chapter is designed to effectuate the following purposes, objectives and standards:
> (1) To promote the health, safety and welfare *of the occupants or users of buildings and structures and the general public.*

(Italics ours.) Laws of 1974, 1st Ex. Sess., ch. 96, § 2, p. 212 (former RCW 19.27.020). The buyers contend that the clear intent of the statute is to protect them individually.

This court and the Court of Appeals have on numerous occasions rejected the contention that building codes impose a duty upon local governments to enforce the provisions of such codes for the benefit of individuals. *E.g., Halvorson,* at 676; *Rosen v. Tacoma,* 24 Wn. App. 735, 740–41, 603 P.2d 846 (1979); *Georges v. Tudor,* 16 Wn. App. 407, 409–10, 556 P.2d 564 (1976); *see also Haslund v. Seattle,* 86 Wn.2d 607, 611 n.2, 547 P.2d 1221 (1976). These cases recognize that building codes, the issuance of building permits and building inspections are devices used to secure to local government the consistent compliance with zoning and other land use regulations and code provisions governing the design and structure of buildings. *See Haslund,* at 611 n.2; *Georges,* at 409; 9A E. McQuillin, *Municipal Corporations* §§ 26.200, 26.200.05. As such, the duty to issue

building permits and conduct inspections is to protect the health and safety of the general public. Accordingly, we continue to adhere to the traditional public duty rule that building codes impose duties that are owed to the public at large.

The buyers argue that under *Halvorson* the public duty rule does not apply to them because of their status as "occupants" of the house. In *Halvorson,* we acknowledged the traditional rule that a local government is under no duty, ascertainable in tort, to ensure compliance with its building code. We held, however, that the City of Seattle could be liable for failure to enforce the Seattle Housing Code because the code, in its declaration of purpose, evidenced the "clear intent" to protect building occupants. *Halvorson,* at 676. That purpose was to identify "conditions and circumstances [which] are dangerous and a menace to the health, safety, morals or welfare of *the occupants* of such buildings and of the public, . . ." (Italics ours.) *Halvorson,* at 677 n.1.

The "clear intent" to protect occupants found in *Halvorson* is not present here. The purpose section of the Seattle Housing Code focuses on substandard housing that is unfit for human habitation. The primary purpose of the Seattle Housing Code is necessarily more focused on the public health and safety of occupants of substandard buildings. On the other hand, the purpose of the State Building Code Act is much broader. While the Act promotes the welfare of occupants, its primary purpose is to require that minimum performance standards and requirements for building and construction materials be applied consistently throughout the state.

Additionally, *Halvorson* requires that an injured plaintiff show "culpable neglect regarding, or indifference to" violations of the building code. *Halvorson,* at 678; *see Hartley v. State,* 103 Wn.2d 768, 783, 698 P.2d 77 (1985). The requirement was met in *Halvorson* with allegations that the

City had actual and long–standing knowledge of noncompliance with the Seattle Housing Code. There is no evidence of such culpability in the present case.

The State Building Code Act's building permit and inspection requirements impose a duty which is owed to the general public as a whole. We find no legislative intent that the Act was intended to protect the class of building occupants in addition to the general public.

### SPECIAL RELATIONSHIP EXCEPTION

The buyers and the realtor argue that the County owes them an actionable duty under the "special relationship" exception to the public duty doctrine. The buyers contend they come within the special relationship exception by virtue of their status as the first occupants of the house and because they relied on the County's inspection and issuance of the building permit. The realtor also claims a special relationship because it prepared the permit application for the sellers and relied on the inspection in closing the sale.

██ The special relationship exception is a "focusing tool" used to determine whether a local government "is under a general duty to a nebulous public or whether that duty has focused on the claimant." *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 304–05, 669 P.2d 468, 41 A.L.R.4th 86 (1983). A special relationship arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff. *J & B Dev. Co.*, at 307; *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 286–87, 669 P.2d 451, 39 A.L.R.4th 671 (1983); *see Bailey v. Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987).

In *J & B Dev. Co.*, King County issued a building permit to a developer. The approving official and a later inspection failed to note that the building plans did not provide for part of the roadway adjacent to the property. The developer alleged that the County negligently issued the permit

and performed the inspection. Although the developer alleged negligence, we held that a special relationship existed between the County and the developer because the developer dealt directly with the County's agent and had justifiably relied upon the permit and inspection. *J & B Dev. Co.*, at 306–07.

*J & B Dev. Co.* was influenced by the simultaneous ruling in *Chambers–Castanes*. There, a special relationship was found where a crime victim made 11 calls to the police for help. Some of the calls were met with *express assurances* from the police dispatcher that help was on the way, but the police did not arrive until 1 hour and 20 minutes later. *J & B Dev. Co.* broadened the special relationship exception to the public duty doctrine by eliminating the requirement of express assurances. *J & B Dev. Co.* held that a plaintiff may rely on *inherent assurances* in a duty vested in a public official. The court stated: "The issuance of a building permit *inherently implies* that the issuing agent has *verified* that the proposed structure is in compliance with applicable code provisions." (Italics ours.) *J & B Dev. Co.*, at 306. The court then found that building permit and inspection requirements create a duty of care owed to "a limited class of citizens, the builders." *J & B Dev. Co.*, at 307.

*J & B Dev. Co.* assumed, incorrectly, that the issuance of a building permit is an official action by which a local government implicitly approves a builder's plans to erect a structure of the type and at the place approved. Issuance of a building permit does not implicitly imply that the plans submitted are in compliance with all applicable codes. Nor do periodic building code inspections implicitly imply that the construction is in compliance with all applicable codes. Building permits and building code inspections only authorize construction to proceed; they do not guarantee that all provisions of all applicable codes have been complied with. *See* 9A E. McQuillin, *Municipal Corporations* §§ 26.200, 26.200.05 (3d ed. 1986); 101A C.J.S. *Zoning and Land Planning* § 218 (1979).

*J & B Dev. Co.*, in effect, held that local government is under a legal duty to verify that a permit application and the construction of a building is in compliance with all applicable codes. The court, however, imposed this duty without evaluating relevant public policy considerations. We now engage in a weighing of public policy considerations. In doing so, we find no alternative but to overrule *J & B Dev. Co.*

We hold that no duty is owed by local government to a claimant alleging negligent issuance of a building permit or negligent inspection to determine compliance with building codes. The duty to ensure compliance rests with individual permit applicants, builders and developers. Accordingly, the special relationship exception to the public duty doctrine has no application where a claimant alleges negligent enforcement of building codes because local government owes no duty of care to ensure compliance with the codes.

The concept of duty is a reflection of all those considerations of public policy which lead the law to conclude that a "plaintiff's interests are entitled to legal protection against the defendant's conduct." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 53, at 357 (5th ed. 1984); *see Haslund v. Seattle,* 86 Wn.2d 607, 611 n.2, 547 P.2d 1221 (1976). The existence of a duty is a question of law. *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984). Several policy considerations compel our conclusion that it is the duty of individuals, not local government, to ensure compliance with building codes.

First, the primary purpose of building permits and building code inspections is to secure to local government consistent compliance with construction, zoning and land use ordinances. *See Haslund,* at 611 n.2; *Georges v. Tudor,* 16 Wn. App. 407, 409, 556 P.2d 564 (1976); *see also* 9A E. McQuillin, *Municipal Corporations* §§ 26.200, 26.200.05. As one commentator suggests:

Provisions for permits and inspections are to enable enforcement of the laws; they are not a benefit to a

private developer. Instead of conferring a benefit, zoning and building codes act as a limitation on the ability of a landowner to develop his or her property.

Comment, *Municipal Tort Liability for Erroneous Issuance of Building Permits: A National Survey,* 58 Wash. L. Rev. 537, 556 n.90 (1983). We have already indicated that building codes are designed to protect the public safety, health and welfare, not to protect individuals from economic loss caused by public officials while carrying on public duties.

Second, placing the burden on local government to ensure compliance with building codes is unreasonable in light of budgetary and personnel constraints. Permit applicants, builders and developers are in a better position to prevent harm to a foreseeable plaintiff than are local governments. Thus, it is more equitable to impose on such individuals the duty to ensure compliance.

Third, the approval of construction plans and satisfactory inspections do not absolve a builder from the legal obligation to comply with statutes. *See* Annot., *Liability of Municipal Corporation for Negligent Performance of Building Inspector's Duties,* 41 A.L.R.3d 567, § 5, at 571 (1972). Here, for example, the permit on its face stated that it may be revoked if the work was not done in compliance with the County's building code.

Fourth, imposing liability on individuals for noncompliance with building codes is consistent with this State's zoning vested rights doctrine. Generally, the doctrine protects an applicant's right to develop land, despite changes in the zoning laws, only if the applicant has filed a complete and timely building permit application that is in full compliance with zoning and building codes in existence at the time of the application. *See* Comment, *Washington's Zoning Vested Rights Doctrine,* 57 Wash. L. Rev. 139, 143 (1981).

In *Nolan v. Blackwell,* 123 Wash. 504, 212 P. 1048 (1923), a public official issued a building permit to the plaintiff to construct a garage. Neither the plaintiff nor the

public official realized that the structure was not in compliance with a zoning ordinance. The court held that the noncomplying permit was void and that no rights vested in the plaintiff even though the public official was partially responsible for the noncompliance. *Nolan,* at 506; *accord, Eastlake Comm'ty Coun. v. Roanoke Assocs.,* 82 Wn.2d 475, 483, 513 P.2d 36, 76 A.L.R.3d 360 (1973). Thus, in the context of vested rights, the burden to comply with building codes is on the builder. The burden should be the same in cases where a plaintiff seeks damages for the negligent issuance of a building permit.

Finally, *J & B Dev. Co.* has caused local government to become guarantors of each and every construction project. *J & B Dev. Co.* has shifted the risk of erroneous permit issuance and inspections from individuals to local governments.

> This shift in responsibility provides an economic disincentive to private contractors to conduct their own examination of the building and zoning codes. Instead, developers can rely on the municipality to insure that the permit application complies with all relevant codes and ordinances, secure in the knowledge that if the public official failed to discover all the errors in the submitted application, the developer would be indemnified for any resulting losses.

(Footnote omitted.) 58 Wash. L. Rev. at 560. Requiring local government to indemnify an individual for losses resulting from the negligent administration of building codes imposes substantial costs on local government with little or no corresponding benefit.

The policy underlying the public duty doctrine is that legislative enactments for the public welfare should not be discouraged by subjecting a governmental entity to unlimited liability. *Rogers v. Toppenish,* 23 Wn. App. 554, 559, 596 P.2d 1096, *review denied,* 92 Wn.2d 1030 (1979). *J & B Dev. Co.* has obscured this purpose. Under *J & B Dev. Co.,* local governments may be subjected to virtual unlimited liability. This potential exposure to liability can only

dissuade public officials from carrying out their public duty. This can no longer be tolerated.

Our holding that there is no duty owing to an individual in the routine handling of building permits and building code inspections does not absolve local government from all liability and responsibility for the enforcement of building codes. A duty of care may arise where a public official charged with the responsibility to provide accurate information fails to correctly answer a specific inquiry from a plaintiff intended to benefit from the dissemination of the information. *See Meaney v. Dodd,* 111 Wn.2d 174, 180, 759 P.2d 455 (1988); *J & B Dev. Co. v. King Cy.,* 29 Wn. App. 942, 953–54, 631 P.2d 1002 (1981), *aff'd on other grounds,* 100 Wn.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1983); *Rogers,* at 560–61. In *Rogers,* the court imposed a duty of care on a public official, where the official in response to a specific inquiry, gave the plaintiff inaccurate zoning information. The court relied on Restatement (Second) of Torts § 552(3) (1977) which provides:

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

In this narrow situation, a special relationship is created because: (1) there is direct contact between the public official and the plaintiff, (2) the official, in response to a specific inquiry, provides express assurances that a building or structure is in compliance with the building code, and (3) the plaintiff justifiably relies on the representations of the official. The creation of a special relationship between the plaintiff and the public official gives rise to a duty to use reasonable care when furnishing information. Once the existence of duty is established, the plaintiff may proceed in tort against the local government.

As to the performance of building code inspections, a duty shall continue to be recognized where a public official

knew of an inherently dangerous and hazardous condition, is under a duty to correct the problem and fails to meet this duty. *See Halvorson v. Dahl,* 89 Wn.2d 673, 677–78, 574 P.2d 1190 (1978); *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975); *see also Bailey v. Forks,* 108 Wn.2d 262, 268, 737 P.2d 1257 (1987). The provisions of this opinion do not apply to local governments' intentional torts that cause damages. *See Alger v. Mukilteo,* 107 Wn.2d 541, 730 P.2d 1333 (1987).

Here, the buyers and the realtor have alleged negligence in the issuance of the building permit and the performance of the "special investigation". The County owed them no actionable duty. Because the buyers' and the realtor's claims fail to establish a duty, the County was entitled to judgment on the pleadings pursuant to CR 12(b)(6).

### Conclusion

We find that neither the legislative intent rule nor the special relationship exception to the public duty doctrine is pertinent.

We hold that Stevens County owed no duty to the buyers or the realtor arising out of the administration of its building code.

The judgment of the Court of Appeals is affirmed.

Andersen, Callow, Goodloe, and Durham, JJ., concur.
Dolliver, J., concurs in the result.

Utter, J.—I concur with much of the majority opinion. It reflects verbatim in many areas views I have previously expressed to this court. The majority, however, unnecessarily complicates what should be a straightforward analysis of the concept of duty and its applicability in these cases. There is no need to use the public duty doctrine when there is no duty at all. The basic question is simple: whose duty is it to ensure that construction projects meet the standards of a local building code, the builder or the government? When we conclude there is no duty on the part of the

County then it follows that the duty of compliance is on the shoulders of the builder alone.

The majority reaches the same conclusion but only after additional and unnecessary steps involving the public duty doctrine (*i.e.,* that a duty to the public in general is a duty to no one in particular). The majority must first conclude that the County's duties in issuing the permits and inspecting the premises were of a public nature only. Next, the majority must find that the legislative intent exception does not apply in this instance, even though the statutory language that enabled us to find such legislative intent in *Halvorson v. Dahl,* 89 Wn.2d 673, 676, 574 P.2d 1190 (1978), is virtually indistinguishable from the language of the State Building Code Act involved here.

Next, the majority must find that there is no "special relationship" exception applicable in this case. In addressing this question, the consistency of the majority opinion breaks down. The public duty analysis is suddenly dropped and the discussion of "special relationship" becomes instead an analysis of the traditional tort concept of duty. It is far from clear whether the majority means to find no County liability here because there is no "special relationship" or whether it means to find no liability because the County had no duty to verify building code compliance.

I would reach the same result by directly reaffirming the traditional rule that it is the duty of a builder not the government to ensure that his work complies with the building codes.

PEARSON, C.J., and BRACHTENBACH, J., concur with UTTER, J.