Kent M. DEBOER, Plaintiff—
Appellant,

v.

CITY OF OLYMPIA, a political subdivision of the State of Washington; et al., Defendants—Appellees.

No. 04–35761.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 2006.

Decided June 7, 2006.

Before: REINHARDT, MCKEOWN, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Plaintiff–Appellant Kent DeBoer appeals the district court's order granting Defendants–Appellees' motion for summary judgment. We affirm.

■ The district court properly granted summary judgment as to DeBoer's claim that police officers used excessive force in taking him into custody, in violation of 42 U.S.C. § 1983. The police did not act unreasonably in formulating a plan to seize DeBoer. *See Billington v. Smith,* 292 F.3d 1177, 1184 (9th Cir.2002). In being dispatched to the house, the officers were told that DeBoer had threatened to harm his parents and himself. When they arrived at the DeBoer home, DeBoer appeared to be assaulting his father. As police investigated, DeBoer threw chairs and a pot of scalding water at the officers and threatened them with knives. Even after his parents were out of the house, the number of officers at the scene was limited and the officers could properly consider the possibility that DeBoer would leave the house and put others at risk. Although it might have been prudent to consult the mental health professionals present at the scene before forcibly entering the house, we cannot conclude that the responsible officers violated DeBoer's constitutional rights in failing to do so, given the unsettled and threatening situation that confronted them. *Id.* at 1188–89 (explaining that officers "need not avail themselves of

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

the least intrusive means of responding" and need only act "within that range of conduct we identify as reasonable"). Unlike the situation in *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1361 (9th Cir.1994), the officers' entry into the house without a warrant was not an independent Fourth Amendment violation. The situation was not precipitated by defendants but by DeBoer. The plan that the officers devised intended not to inflict harm upon DeBoer. They aimed to subdue him by use of the Taser, secure him to a gurney so he would not be a danger to himself or others, and then transport him to the hospital for appropriate care. Unfortunately, events did not unfold as planned. DeBoer was alerted when the officers failed in their initial attempt to break through the garage door, ran back to the kitchen to rearm himself with several knives, threw a knife as the door was finally opened, and threatened to throw more knives. In light of that active threat, at that point even DeBoer's expert does not appear to dispute the officers' use of force. The officers' actions did not violate the Fourth Amendment. *Billington*, 292 F.3d at 1190 ("[T]he fact that an officer negligently gets himself into a dangerous situation will not make it unreasonable for him to use force to defend himself.").

■ Even if DeBoer did establish a Fourth Amendment violation, the officers were entitled to qualified immunity because it was not clearly established that the officers' actions, notably the failure to confer with the mental health professionals, violated DeBoer's constitutional rights. Sergeant Hutchings, who formulated the plan for taking DeBoer into custody, could have reasonably believed that the plan was lawful. *See Saucier v. Katz*, 533 U.S. 194, 202, 205–06, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The district court properly granted summary judgment as to DeBoer's claim against the City of Olympia under 42 U.S.C. § 1983. DeBoer presented no evidence that the City of Olympia police acted through an official policy or custom to violate his constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). DeBoer also presented no evidence that Hutchings was an official with final policy-making authority who ordered the police to violate his rights. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir.1999).

DeBoer's remaining state law claims also fail. Our determination that the police did not use excessive force in seizing him precludes DeBoer's assault and battery claim. *Boyles v. Kennewick*, 62 Wash.App. 174, 813 P.2d 178, 179 (1991). The public duty doctrine precludes DeBoer's claims that the individual officers were negligent. *Taylor v. Stevens County*, 111 Wash.2d 159, 759 P.2d 447, 449 (1988). DeBoer also has not shown that there are any genuine issues of material fact as to whether the City of Olympia negligently hired, trained, and supervised the police officers.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting.

I cannot agree with the majority that summary judgment should be granted to Defendants–Appellees on DeBoer's claim of excessive force. Under *Billington v. Smith*, 292 F.3d 1177 (9th Cir.2002), an officer's otherwise reasonable defensive use of force may be rendered unreasonable as a matter of law if "an officer intentionally or recklessly provokes a violent response, and the provocation is an independent constitutional violation." *Id.* at 1190–91. Here, the officers committed an independent Fourth Amendment violation by

recklessly using unreasonable force in entering the house—where DeBoer was legally residing—with guns drawn, in order to take custody of him, and in doing so, "caused the 'escalation that led to the shooting' . . . and 'provoked an armed response,'" *Id.* at 1189 (emphasis and citation omitted). It therefore follows that "they [may] be held liable for [the] shooting . . .—even though they reasonably shot him at the moment of the shooting." *Id.* at 1188. The contours of this constitutional rule were clearly established in *Alexander v. City and County of San Francisco,* 29 F.3d 1355 (9th Cir.1994). Any conclusions the officers may have drawn as to the lawfulness of their conduct would be unreasonable and therefore would not provide a basis for qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In the instant case, there was no threat to the safety of the officers at the time they forcibly entered the residence. DeBoer's parents had left the house and no officers or other persons were inside—only DeBoer. Thus, the only potential and immediate danger presented by DeBoer was to himself—the exact type of danger that the mental health professionals from South Sound Mental Health Services ("SSMH") would be best equipped to address. The officers were well aware of DeBoer's mentally unstable condition, given Sergeant Hutchings's communication with his parents, the information relayed to the officers through the 911 dispatch, and the past experience of Officers Brown and Tupper. There is nothing in the record to suggest that any of the officers consulted the SSMH workers who were on the scene about his condition or as to any possible alternative courses of action; in fact, the report of DeBoer's police procedures expert states that "SSMH personnel were not allowed to communicate [with DeBoer] or asked for advice [by the police]." This was directly contrary to the policies and procedures of the Olympia Police Department.

There was no justification for the police officers' failure to follow departmental policy, consult with the mental health professionals on the scene, and allow them to communicate with DeBoer so as to calm him down and help him regain his mental equilibrium. Given the amount of time that the officers were present at the house, there was surely no need to make split-second decisions. There was an adequate amount of time for other officers to arrive and for Sergeant Hutchings to meet with DeBoer's parents. Surely he could have met with the mental health professionals as well, to obtain their aid in formulating a plan to deal with the mentally disturbed individual. Had the officers consulted with the SSMH personnel about DeBoer's potential reactions to different tactical or strategic methods of dealing with him, they likely would have avoided a situation in which deadly force was required.

In our past decisions, we have held that officers must use special care in dealing with those who are emotionally or mentally disturbed. *See Deorle v. Rutherford,* 272 F.3d 1272, 1283 (9th Cir.2001), *reh'g en banc denied,* 272 F.3d 1272, 1274 (9th Cir. 2001) (holding that "where it is or should be apparent to the officers that the individual is emotionally disturbed, that is a factor that must be considered in determining, under *Graham [v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ], the reasonableness of the force employed"). In *Alexander,* the plaintiff argued that "it was unreasonable for the officers to storm the house of a man whom they knew to be a mentally ill, half-blind recluse who had threatened to shoot anybody who entered." *Id.* at 1366. This court agreed, holding that granting summary judgment to the defendants was in-

appropriate under such circumstances, because the force used in storming the house could be unreasonable, depending on the officers' reason for entering the house. *Id.* at 1367. As we did in *Alexander,* I would hold in this case that summary judgment was not appropriate, because it is not reasonable to storm a house with guns drawn in order to take into custody a mentally unstable individual suffering from Chronic Paranoid Schizophrenia who does not actively present a threat to anyone in his immediate vicinity, unless all reasonable alternatives have been exhausted.

For the above reasons, I would conclude that DeBoer's Fourth Amendment rights were violated by the officers' conduct, that the officers are not entitled to qualified immunity, and that the district court's grant of summary judgment to defendants was in error. Accordingly, I dissent.

Before: RYMER and WARDLAW, Circuit Judges, and SELNA,* District Judge.