IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DONNA GARCIA, A Washington Resident; CONCEPCION GARCIA, an Individual; PATRICIA JANE LEIKAM, as the Administrator of the Estate of Tiairra Garcia, A Deceased Person, | ) ) ) ) ) ) | No. 33204-7-III |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| FRANKLIN COUNTY, A Municipal Corporation, | ) ) ) | |
| Respondent. | ) ) | |

KORSMO, J. — The trial court dismissed this action against Franklin County on the basis that the appellants were collaterally estopped by a previous appeal involving the city of Pasco. We affirm, but on different grounds.

FACTS

Appellants are the family and estate of Tiairra Garcia, whose death on June 22, 2008, is the basis for this lawsuit. That evening she had gone out with two friends, Marnicus Lockhard and Ashone Hollinquest. They drove to a bar, and she waited inside the van. When they were thrown out of the bar due to an altercation with another patron, Ms. Garcia drove them to another bar.

After Ms. Garcia parked the van, Lockhard asked Hollinquest to hand him a gun that was in the backseat. While handing the weapon forward, it accidentally discharged and the bullet struck Ms. Garcia. Rather than take her to the hospital, Lockhard drove the van from his passenger seat toward a friend's house. He struck a number of vehicles along the route and several telephone calls were placed to the 911 system. The phone call at issue in this appeal was placed by neighbors across the street from where the van came to rest in the yard of a house at 1611 Parkview.

Melissa Gennett observed the activity while her husband, John Gorton, called 911. She saw two men take what looked like a body out of the van and carry it into the backyard. Mr. Gorton relayed to the 911 operator: "They pulled somebody out of a van in the back of the house, drove [sic] them to the back of the house."[1] Clerk's Papers (CP) at 692. Mr. Gorton stayed on the phone until an officer arrived. Ms. Garcia was still alive at this point.

The officer did not inquire about the "body" nor check the back of the premises; he investigated only the hit and run. Ms. Garcia died while at 1611 Parkview. The two men then attempted to hide the body. Ultimately, they dumped the body in Mt. Rainier National Park. It was not recovered until June, 2009.

---

[1] A transcript provided by the city of Pasco for the first appeal translated the "drove" reference as "drugged", while Division One ultimately used the word "dragged." Clerk's Papers at 187.

No. 33204-7-III
*Garcia v. Franklin Co.*

The following June the appellants filed suit against the city of Pasco, Hollinquest, Lockhard, and the bar where the two men had been drinking. Our record does not indicate the resolution of the action against the last three defendants. The city of Pasco, however, successfully obtained summary judgment dismissal of the case on the basis of the public duty doctrine. The appellants appealed to this court, which administratively transferred the case to Division One of the Court of Appeals.

While that appeal was pending, Division One decided the case of *Robb v. City of Seattle*.[2] *Robb* recognized a cause of action under the *Restatement (Second) of Torts* § 302B (1965) notwithstanding the public duty doctrine. The appellants added that issue to their pending appeal in Division One. They also filed suit against Franklin County and the city of Pasco. Franklin County was named in the second action due to the actions of its employee, the 911 operator. The amended complaint alleged that the county's 911 operator negligently conveyed to the responding officer "either false and/or incomplete information regarding facts provided." CP at 14.

Division One issued its decision and affirmed the dismissal of the case against the city of Pasco and its officers. The court also discussed the actions of the 911 operator in the course of its analysis.[3] After the Division One opinion issued, the city of Pasco was

_____

[2] 159 Wn. App. 133, 245 P.3d 242 (2010), *rev'd*, 176 Wn.2d 427, 295 P.3d 212 (2013).

[3] This opinion will address the Division One analysis later in this opinion.

3

dismissed from the current case. Franklin County also sought dismissal, arguing that the Division One opinion in the first appeal collaterally estopped the appellants from pursuing action against the 911 operator and the county. The trial court granted summary judgment in favor of the county.

The appellants once again appealed to this court. We retained this case and the parties presented oral argument to a panel.

### ANALYSIS

The primary issue in this appeal is whether the ruling in the first appeal required the trial court to dismiss this action against Franklin County. The appellants also argue that the county undertook a duty to Ms. Garcia due to the county's operation of the 911 system and the acceptance of the telephone call from Mr. Gorton. We conclude that appellants correctly argue that collateral estoppel does not apply, but we nonetheless affirm because they do not establish that the county had a duty to act under the *Restatement*.

This court applies de novo review to an order granting summary judgment on the basis of collateral estoppel. *Barr v. Day*, 124 Wn.2d 318, 324, 879 P.2d 912 (1994). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 842, 999 P.2d 54 (2000). We consider the facts in a light

4

No. 33204-7-III
*Garcia v. Franklin Co.*

most favorable to the nonmoving party. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998).

Collateral estoppel precludes re-litigation of the same issue in a subsequent action involving the parties. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). In order to prevail on a claim of collateral estoppel, the party seeking application of the doctrine bears the burden of showing that (1) the identical issue necessarily was decided, (2) there was a final judgment on the merits, (3) the party against whom the doctrine is asserted must have been a party (or in privity with a party) to the earlier proceeding, and (4) application of collateral estoppel will not work an injustice against the estopped party. *Id.* at 307. The estopped party must have had a "full and fair opportunity to litigate the issue in the earlier proceeding." *Id.*

Although Washington abolished sovereign immunity in 1967,[4] that action did not itself create any new causes of action, duties, or liabilities where none existed before. *J & B Dev. Co. v. King County*, 100 Wn.2d 299, 304-305, 669 P.2d 468 (1983), *overruled on other grounds by Taylor v. Stevens County*, 111 Wn.2d 159, 759 P.2d 447 (1988); *see also Chambers-Castanes v. King County*, 100 Wn.2d 275, 288, 669 P.2d 451 (1983). It has been repeatedly held that

> [t]he threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Whether the defendant is a

---

[4] LAWS OF 1967, ch. 164.

5

governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general. This basic principle of negligence law is expressed in the "public duty doctrine."

*Taylor*, 111 Wn.2d at 163 (citation omitted); *accord Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784-785, 30 P.3d 1261 (2001). Under the public duty doctrine

no liability may be imposed for a public official's negligent conduct unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one)."

*Taylor*, 111 Wn.2d at 163 (quoting *J & B Dev. Co.*, 100 Wn.2d at 303).

Plaintiffs must fall within one of the established exceptions[5] to the public duty doctrine in order to demonstrate that they were owed a duty of care by a governmental entity. *Cummins v. Lewis County*, 156 Wn.2d 844, 853, 133 P.3d 458 (2006). It is only once plaintiffs have established that they were owed a duty of care as an exception to the public duty doctrine that "claimants may proceed in tort against municipalities to the same extent as if the municipality were a private person." *J & B Dev. Co.*, 100 Wn.2d at 305-306. Thus, at the outset of a negligence action against a governmental entity, courts look to the public duty doctrine to determine whether the government owed the plaintiffs a duty of care.

---

[5] There are four exceptions to the public duty doctrine, "(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship." *Cummins v. Lewis County*, 156 Wn.2d 844, 853 n.7, 133 P.3d 458 (2006).

The appellants originally relied upon the rescue doctrine exception to assert that the county owed Ms. Garcia a duty of care. One who undertakes to render aid or warn someone in danger is required to exercise reasonable care in his or her efforts. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 299, 545 P.2d 13 (1975). Where that person fails to exercise reasonable care and the offer to render aid is relied upon, the rescuer may be liable for negligence. *Chambers-Castanes*, 100 Wn.2d at 285 n.3. This doctrine applies even if the state agent is acting gratuitously or beyond his or her statutory authority. *Id.* The purpose of the rescue doctrine is to impose a duty where the government affirmatively undertakes to either warn someone of danger or render aid. *Brown*, 86 Wn.2d at 299.

An alternative basis to the public duty doctrine for finding governmental liability is found in *Restatement* § 302B. That section provides that an "act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

In the previous appeal, Division One concluded that the city of Pasco did not owe Ms. Garcia a duty under either the rescue doctrine or § 302B.[6] In this appeal, the appellants do not pursue their claim that the rescue doctrine exception applied and only

---

[6] *Garcia v. City of Pasco*, noted at 181 Wn.2d 1009, slip op. at 9 (2014).

argue § 302B. Since the primary issue presented involves the scope of the Division One ruling, it is time to consider it.

At issue in the first appeal was whether the city of Pasco and its officers were liable for failing to investigate the report by Mr. Gorton that the occupants of the van had taken a body to the back of the house at 1611 Parkview. Specifically, the appellants contended that the Pasco Police Department had knowledge that someone had been dragged[7] into the 1611 Parkview house and did not act upon the information. Division One rejected the argument on both factual and legal grounds. Reciting the transcribed conversation between Mr. Gorton and the 911 operator, the court noted that the operator had not promised to do anything with the information. *Garcia*, slip op. at 4-5. The court also rejected the argument that the operator had implicitly promised to convey the information to the police. *Id.* at 5. Because there was no gratuitous promise to aid Ms. Garcia, the rescue doctrine was inapplicable. *Id.* at 5-6.

The court then turned to analyze potential liability under § 302B. *Id.* at 7-8. The court found that there was no affirmative act by the police that would give rise to liability. *Id.* at 9. The court stated:

> The record does not demonstrate that the police promised to investigate
> Gorton's statement or were even aware of it. The 911 operator did not
> indicate that the police would take any particular action and did not

---

[7] As noted in footnote 1, different verbs have been used in different transcripts of the recording. We use "dragged" in accordance with appellants' view of the evidence.

8

> acknowledge Gorton's statement about a body, other than to respond,
> "Okay." This does not constitute an affirmative indication that the police
> would investigate Gorton's statement.

*Id.* The court then noted that the officers' failure to investigate was at most nonfeasance and did not give rise to liability under the § 302B. *Id.*

With this background in mind, it is finally time to address the appellants' arguments. First, they contend that the trial court erred in granting summary judgment on the basis of collateral estoppel. We agree. Critical here is whether the Division One opinion *necessarily* determined the *identical* issue. *Christensen*, 152 Wn.2d at 307. It did not.

At issue before Division One was the duty, if any, owed by the city of Pasco and its police force to Ms. Garcia under § 302B. The duty of Franklin County and its 911 operator[8] was not *necessarily* at issue. Nonetheless, the Division One opinion appears to address, in part, the operator's actions. It expressly notes that the operator did not convey Gorton's comment about a dragged body to the police. For that reason, the police did not know about Ms. Garcia and had no obligation to investigate because there was no affirmative action taken. Slip opinion at 9. Accordingly, Franklin County argues that

---

[8] There apparently was confusion in the early stages of the first case whether or not the 911 operator was employed by Pasco or by Franklin County. It is unclear whether that confusion reached Division One or not. The discovery that the operator was employed exclusively by the county was the basis for the current suit listing the county as a defendant.

9

Division One already determined that the operator undertook no action for purposes of §
302B liability.

That contention fails for two reasons. First, in context, the Division One opinion
was addressing the *duty*, if any, *of the police* to act. It did not address the operator's
responsibilities, but simply noted the *fact* that the operator's failure to convey the
information did not amount to an affirmative action by the police. Second, even if it had
squarely addressed the *duty* of the 911 operator, that discussion would not have been
*necessary* to the resolution of the question concerning any duty owed by the officers.
Any such discussion would amount to little more than informative dicta on this topic.

At most, the trial court could have given collateral estoppel to the factual ruling
that the operator did not convey Mr. Gorton's information to the police. The legal
consequences flowing from that fact were decided only as they related to the duty of the
police, but not as to any duty of the operator. Accordingly, the Division One opinion did
not necessarily resolve whether Franklin County owed a duty to Ms. Garcia and the trial
court erred in ruling otherwise.

Nonetheless, that error does not resolve this case. The appellants argue that the
facts establish that Franklin County owed Ms. Garcia a duty under § 302B. Specifically,
they contend that the operation of a 911 system and the receipt of the phone call from Mr.
Gorton constituted an affirmative action giving rise to liability under § 302B. We
disagree.

10

This issue was decided in *Robb*, 176 Wn.2d 427. There the court authoritatively construed § 302B. At issue was the fact that police investigating a disturbance noticed, but did not seize, several shotgun shells laying on the ground near the men they talked to. After police left, one of the men returned to scene, picked up one of the shells, and soon thereafter used it to shoot and kill Mr. Robb. *Id.* at 430. Our court suggested that § 302B was an alternative basis to the public duty doctrine's four exceptions for finding governmental liability. *Id.* at 433, 439 n.3. However, that duty arose only in situations where the government's own affirmative act created a high risk of harm. *Id.* at 433-434. The fact that the police did not pick up and remove the shells was, at most, an omission. It was not an affirmative action that created a risk of harm. *Id* at 435-438. To rule otherwise would be to extinguish the "firm line between misfeasance and nonfeasance." *Id.* at 439.

The same problem is presented in this case. Allegedly, the operator failed to convey information to the police that Ms. Garcia had been dragged into the house. On its face, that allegation involves nothing more than a failure to act, *i.e.*, a failure to pass on the information. That failure is not an affirmative action. Even if the receipt of the 911 call gave rise to a duty to alert the police about the caller's report—an issue we do not decide—the operator's failure to live up to that duty was not an affirmative action within the meaning of § 302B. It was no more than an omission. As *Robb* teaches, that omission is not a basis for liability.

11

No. 33204-7-III
*Garcia v. Franklin Co.*

Summary judgment was properly granted to Franklin County. The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, A.C.J.

12