[No. 33777-7-I.   Division One.   August 26, 1996.]

JOHN BEAL, *as Guardian, Appellant*, v. THE CITY OF SEATTLE, ET AL., *Respondents*.

deliberately misrepresenting the evidence or that they amounted to an attack on defense counsels' veracity.

218

*Stephen G. Smith*, for appellant.

*Mark H. Sidran, City Attorney,* and *Marcia M. Nelson, Assistant,* for respondents.

KENNEDY, J. — John Beal, who filed the instant wrongful death action in his capacity as the guardian ad litem for the minor children of Melissa Fernandez, appeals the dismissal of the action, contending that the trial court erred in denying his CR 17(a) motion to amend the complaint so as to name Beal as plaintiff in his capacity as the personal representative of the estate of Melissa Fernandez.[1] After denying the motion to amend, the court granted the City's motion to dismiss the action under CR 12(b)(6) for failure to state a claim upon which relief may be granted based on Beal's failure to bring the action in the name of the statutory plaintiff. Because the record contains substantial evidence in support of the trial court's determination that the law suit was not brought by an improper party by reason of honest or understandable mistake, and indeed, shows conclusively that there was no mistake at all as to the proper statutory plaintiff, we affirm the trial court's rulings. We also conclude that the trial court did not err by denying Beal's motion for reconsideration. Accordingly, we do not reach the City's provisional cross-appeal seeking review of the trial court's denial of its motion for summary judgment of dismissal on grounds of lack of duty, lack of breach of duty, and lack of proximate cause.

## FACTS

On the afternoon of June 1, 1989, Melissa Fernandez went to the home of her estranged husband to collect some of her children's belongings. Fernandez, who had a domestic violence protection order, called 911 when she arrived and requested stand-by police assistance. The 911 operator told Fernandez, "We'll get the police over there for you."

---

[1]A declaration contained in the record states that Melissa Fernandez is survived by her mother Shirley Butcher-Brodersen, her brother Mark Butcher, and her three minor children, Michael Martinez, Mariella Butcher-Martinez, and Marcos Fernandez. We regret that we are unable to ascertain from the record whether the declaration or the caption of the complaint contains the true names and spellings of the surviving family members.

Clerk's Papers at 282. Within the next 20 minutes, while Fernandez was sitting in the cab of a truck in front of the residence waiting for a police officer to arrive, her husband approached, and shot her dead. He then shot and killed himself. The 911 tape containing the report of the shootings was made 22 minutes after the tape containing Fernandez's call for stand-by assistance. By the time of the shootings, no police officer had as yet been dispatched in response to the call for stand-by assistance.

On July 19, 1989, John Beal was appointed guardian ad litem for Melissa Fernandez's three minor children. Beal obtained court approval to retain attorney Stephen G. Smith on a contingency fee basis on that same day. Smith obtained an order compelling release of 911 tapes and other investigative materials on July 24, 1989. Smith contends in a declaration contained in the record that it was not until October 24, 1991, that he finally received the court-ordered production. Some 7 months later, 3 years to the day from the day Fernandez was killed, a wrongful death action was instituted against the City of Seattle and others. The complaint alleged that the City had been negligent in not promptly dispatching a police officer to provide Fernandez with stand-by assistance. The complaint's caption identified the plaintiffs as "John Beal as Guardian ad Litem for Michael Martinez, Mirella Martinez, and Marcos Martinez[;] Shirley Bucher-Broderson, and Mark Bucher." Clerk's Papers at 242. However, paragraph 1.1 of the complaint states: "John Beal is an adult person, duly appointed to serve as Guardian ad Litem for the minor children, Michael Martinez, Mirella Martinez, and Marcos Martinez, of the decedent Melissa Fernandez *and Personal Representative of the Estate of Melissa Fernandez.*" Clerk's Papers at 242 (emphasis added). At the time the complaint was filed, Beal had not been appointed personal representative of the Fernandez estate. The City was served with a summons and the complaint on August 31, 1992, the last possible day for service allowed by RCW 4.16.170.

On September 3, 1992, Beal was appointed personal rep-

resentative of the estate. That same day, plaintiffs moved ex parte under CR 15(a) to amend the caption and complaint to name Beal as a plaintiff in his capacity as personal representative of the estate of Melissa Fernandez. In a declaration in support of the motion, Smith stated that "*[s]ubsequent* to filing herein counsel for Plaintiff recognized the need for the complaint to be brought in the name of the Estate[.]" Clerk's Papers at 249 (emphasis added). The motion was granted and an ex parte order was entered authorizing amendment of the complaint to include John Beal as personal representative for the estate of Melissa Fernandez as a party plaintiff. An amended complaint naming Beal as the duly appointed personal representative of the estate was filed the same day. The amended complaint was served on the City on September 21, 1992. On October 15, 1992, the City answered the complaint, generally denying the allegations raised in paragraph 1.1 of the complaint and raising eight affirmative defenses, but not including any challenge to Beal's capacity as a party plaintiff.

In May 1993, the City moved for summary judgment of dismissal, arguing the absence of duty, breach, and legal and proximate causation. Judge Nancy Holman heard and denied the motion, finding that issues of fact existed. The City's motion for reconsideration was denied.

In August 1993, the City moved to vacate the amended complaint and to dismiss the original complaint. In response to this motion, Beal conceded that it had been improper to move to amend ex parte under CR 15(a), and that the amended complaint should be vacated. Beal counter-moved to amend the complaint pursuant to CR 17(a), however, arguing that he was entitled, as the real party in interest (as personal representative of the estate), to a reasonable amount of time to ratify his prior actions which were taken as guardian ad litem. In support of this motion, attorney Smith filed a declaration in which he stated that he had realized *before* filing the suit that the action could be brought only by the personal representa-

tive of the estate, but that he had not had sufficient time to prepare and file the necessary paper work on the last day of the running of the statute of limitations. The City opposed this motion to amend, arguing that the facts did not support a finding of an honest or understandable mistake justifying relief under CR 17(a).

The motion to amend was heard on September 10 and 24, 1993, before Judge Kathleen Learned. The court determined that there was no mistake in this case, honest, understandable or otherwise:

> It may be a very onerous and harsh result in this case; however, it is clear from the record that counsel and the plaintiff were aware at the time of filing this action that it was necessary that the personal representative bring the case on behalf of the estate. Counsel admits that that is why the body of the complaint does in fact relate Mr. Beal as the personal representative.
>
> The only thing that's been presented to the Court by way of a mistake or excuse is the assertion that there was no time to have Mr. Beal appointed personal representative prior to the filing of the complaint prior to the filing [sic] of the statute of limitations. I see no reason in the record, however, why that should have been the case, why there was no time to do it. There's no indication that it is a lengthy process, other than simply getting the papers together and presenting them to the ex parte department, as was done subsequently in September. I will note that was three months later that it was finally followed-up on. This does not fall into the category of an honest mistake or an understandable mistake by analogy to any of the circumstances raised in the cases. Unfortunate as that may be for the plaintiff, I am constrained by the rule and by the decisions in this case to deny the motion.

Report of Proceedings, September 24, 1993, at 11-12. After the plaintiffs' attorney conceded that the children did not have an independent cause of action, the judge granted the City's CR 12(b)(6) motion to dismiss based upon the failure to bring the action in the name of the personal

representative and the court's denial of the motion to amend the complaint under the relation-back doctrine. The plaintiffs' motion to reconsider was thereafter denied.

This timely appeal and cross-appeal followed.

## DISCUSSION

■ Beal contends that the trial court erred in denying his CR 17(a) motion to amend the complaint. CR 17(a) provides in pertinent part:

> Every action shall be prosecuted in the name of the real party in interest . . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

The purpose of CR 17(a) is to expedite litigation by not permitting technicalities or narrow constructions to interfere with the merits of legitimate controversies. *In re Estate of Crane*, 9 Wn. App. 853, 856, 515 P.2d 552 (1973), *review denied*, 83 Wn.2d 1006 (1974). Most courts construing CR 17(a) have restricted the relation-back provisions of the rule to situations where there has been an "honest mistake" or an "understandable mistake" in naming an improper party. CR 17, Editorial Commentary (2d Ed. 1995); *Rinke v. Johns-Manville Corp.*, 47 Wn. App. 222, 228, 734 P.2d 533, *review denied*, 108 Wn.2d 1026 (1987). Two principles govern the determination of what constitutes an "honest" or "understandable" mistake in a particular case: (1) a mistake can be "honest" or "understandable" even if the proper party could have been ascertained; and (2) the purpose of the restriction is to prevent plaintiffs from using the rule to join or substitute persons whose interests were not contemplated from the beginning of the suit. *Rinke*, 47 Wn. App. at 229-30.

In this case, although it is clear from paragraph 1.1 of the complaint that the personal representative's interests were contemplated from the beginning of the suit, it is also clear that there simply was no mistake. Although in one of his declarations attorney Smith asserted that he realized *after* he filed the complaint that the action had to be brought in the name of the personal representative, in his subsequent declaration Smith asserted that he knew that *before* he filed the complaint; he simply ran out of time to do the necessary paper work to have Beal appointed as personal representative before the running of the statute of limitations. In appellant's opening brief for this appeal, written by attorney Smith, Beal abandons the assertion that Smith learned of the legal requirement only after filing the complaint:

> Shortly before filing the Complaint, counsel for plaintiffs realized that John Beal had not yet been appointed personal representative of the Estate of Melissa Fernandez, but had only been appointed as Guardian ad Litem for decedent's minor children. Counsel recognized that the wrongful death claim could be maintained only by the Estate's Personal Representative, but was unable to prepare and file the necessary paperwork prior to filing the Complaint for Wrongful Death on June 1, 1992.

Appellant's Opening Brief, at 8 (underlining contained in original) (citing Declaration of Stephen G. Smith, Clerk's Papers at 127-28).

Washington courts have found an "honest or understandable mistake" where a widow mistakenly believed that she was the personal representative by virtue of the community property agreement she had had with her deceased husband, *Rinke,* 47 Wn. App. at 231, but not where a party who had relied upon erroneous legal advice that she was qualified to contest a will sought to retroactively toll the 4-month statute of limitations for will-contests by seeking to amend her complaint to join statutory heirs who were qualified to contest the will, but who had not contemplated doing so before the expiration of the

statute of limitations. *In re Estate of Boyd*, 5 Wn. App. 32, 36, 485 P.2d 469 (1971).

In *Boyd*, the court cautioned that CR 17 "should not be misunderstood or distorted[;] . . . 'it is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.' " *Boyd*, 5 Wn. App. at 36 (quoting Notes of Advisory Committee on Rules, 28 U.S.C. Rule 17 (Supp. 1971) (citations omitted)). Here, not only was the determination of the proper party to sue not difficult but also plaintiffs' counsel knew before filing the complaint who the proper party was. Thus, there was no mistake within the meaning of the rule. Here, the only kind of mistake at issue is the mistaken belief that knowingly violating the real party in interest rule makes no difference because the violation can always be cured at a later date by ratification or some other suitable means. We decline to distort the rule to include this kind of "mistake."

The *Rinke* court held that dismissal under CR 17(a) is appropriate only when the trial court has allowed the plaintiff a reasonable time to bring the real party in interest into the suit and joinder, substitution, or ratification cannot be effected. *Rinke*, 47 Wn. App. at 227-28. But in *Rinke*, an honest, understandable mistake had occurred. *Rinke* must be read in light of that fact. Here, there was no mistake.

We conclude that the relation-back requirement of an honest or understandable mistake does not require the trial court to allow time for ratification when there has been no mistake, but rather simply a failure to name the real party in interest in the face of a clear understanding of who that party was. In such an instance, the trial court is well within its discretion to apply the more strict inexcusable neglect standard developed in cases construing CR 15(c). The *Rinke* court recognized that relation back under CR 15(c) has been interpreted more strictly than relation back under CR 17(a). *Rinke*, 47 Wn. App. at 230-31 (citing 3A. L. ORLAND, WASH. PRAC. § 5185, at 43-

44; § 5201, at 324 (3d ed. 1980)). In the ordinary CR 17(a) relation-back case, the more lenient standard is certainly appropriate, but this is not an ordinary CR 17(a) relation-back case. Here, there was no mistake, honest, understandable or otherwise. Here, there was only neglect, in the face of a clear understanding of the legal requirement that the real party in interest bring the wrongful death action. In such instances as this, the trial court *should* determine whether the neglect was excusable, using the CR 15(c) standard. This, the trial court did, and did not err in concluding that failure to bring the law suit in the name of the real party in interest while fully aware of who that party was, was inexcusable neglect. *See North St. Ass'n v. City of Olympia*, 96 Wn.2d 359, 368-69, 635 P.2d 721 (1981) (inexcusable neglect under CR 15(c) for applicants who were at all times aware of necessary parties to fail to name them). Even if the City engaged in foot-dragging with respect to discovery, Smith still had 7 months in which to have Beal appointed as personal representative before the expiration of the statute of limitations on the wrongful death claim, after receiving the 911 tapes and other investigative materials. Failure to have accomplished this simple task before the court house closed on the last day of the running of the statute of limitations was inexcusable neglect.

The trial court's denial of Beal's motion to amend was appropriate, in that such amendment would not have entitled plaintiffs to the benefit of the CR 17(a) relation-back doctrine because the failure to bring the action in the name of the real party in interest was not the result of honest or understandable mistake.

In his motion for reconsideration below, and by way of alternative grounds for seeking reversal of the trial court's order of dismissal, Beal argues that the common law relation-back doctrine validates his previous acts that were beneficial to the estate and that he could have done if he had been duly qualified at the time of the acts. Beal relies on the following explanations of the common law relation-back doctrine:

It is ancient doctrine that the appointment of a personal representative relates back to the decedent's death, validating his previous acts that were beneficial to the estate and that he could have done had he been duly qualified at the time. This is a legal fiction invented to bridge the interval between death and the appointment of a representative.

31 AM. JUR. 2D, *Executors and Administrators* § 386, at 200-01 (1989) (citations omitted).

The doctrine that whenever letters of administration or testamentary are granted they relate back to the intestate's or testator's death is an ancient one. It is fully 500 years old. In the Year Book, 18 Hen. VI. 22, pt. 7, there is a case reported of an administrator maintaining trespass for acts done between the death of his intestate and the issue of his letters.

The doctrine has been accepted with virtual unanimity, since it was promulgated, in a long line of cases.

Annotation, *Relation Back of Letters Testamentary or of Administration*, 26 A.L.R. 1360 (1923) (voluminous citations omitted, dating from 1584 in England, and from 1810 in the United States).

Beal also points to two Florida cases, *Griffin v. Workman*, 73 So. 2d 844, 846 (Fla. 1954) and *Talan v. Murphy*, 443 So. 2d 207, 208 (Fla. App. 1983) for the proposition that both before and after Florida's adoption of the liberal pleading and relation-back provisions of CR 17(a), the Florida courts have relied upon the ancient common law relation-back doctrine in cases involving facts similar to those in the instant appeal.

We find a number of problems with Beal's reasoning. First, Florida's version of the real party in interest rule differs greatly from CR 17(a) and from F.R.C.P. 17(a). *See* West's Florida Statutes Annotated Florida Rules of Civil Procedure, Rule 1.210 and the committee and historical notes contained thereunder. The real party in interest rule in Florida, now and at the time of both the *Griffin* and *Talan* decisions, is permissive, not mandatory, unlike

the real party in interest rule contained in F.R.C.P. 17(a) and Washington's CR 17(a).[2] That the Florida courts rely upon the ancient common law relation-back doctrine is thus not surprising; neither is it surprising that neither the *Griffin* decision nor the *Talan* decision refers to any rule resembling the judicially-imposed honest or understandable mistake requirement for relation back contained in CR 17(a). Florida simply has no such requirement, in that it has not adopted F.R.C.P. 17(a).

We also reject Beal's proposition the CR 17(a) and the ancient common law relation-back rule stand side by side in Washington law with equal viability. First, Beal cites no authority for this proposition, and we can find none. Second, the proposition is illogical—the judicially-imposed honest or understandable mistake requirement for relation back is itself a development in the common law, albeit of more recent origin, and by its very terms it abrogates the ancient relation-back doctrine in cases where no honest or understandable mistake has occurred.

We conclude that the trial court did not err in denying the motion for reconsideration.

Affirmed.

---

[2]Florida's current Rule 1.210(a) reads as follows:

"Every action may be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. All persons having an interest in the subject matter of the action and in obtaining the relief demanded may join as plaintiffs and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if that person's presence is necessary or proper to a complete determination of the cause. Persons having a united interest may be joined on the same side as plaintiffs or defendants, and anyone who refuses to join may for such reason be made a defendant." 604 So. 2d 1110, 1131 (Fla. 1992). The annotations and historical notes above cited reflect that similar permissive versions of the real party in interest rule were in effect when the *Griffin* and *Talan* cases were decided.

BAKER, C.J., and COLEMAN, J., concur.

Reconsideration denied October 17, 1996.

Review granted at 131 Wn.2d 1014 (1997).