954 P.2d 237 (1998)
134 Wash.2d 769
John BEAL, as guardian ad litem for Michael MARTINEZ, Mirella Martinez, and Marcos Martinez, Petitioner,
Shirley Bucher-Broderson and Mark Bucher, Plaintiffs,
v.
The CITY OF SEATTLE, John Doe No. 1, John Doe No. 2, John Doe No. 3, The Seattle Police Department, Respondents.
No. 64848-4.
Supreme Court of Washington, En Banc.
Argued September 18, 1997.
Decided April 2, 1998.
*238 Stephen G. Smith, Bellevue, for Petitioner.
Mark Sidran, Marcia Nelson, Asst., Seattle, for Respondents.
*239 MADSEN, Justice.
This wrongful death action, originally filed by petitioner as guardian ad litem for the minor children of the decedent, was dismissed by the trial court because it was not brought by the personal representative of the decedent's estate as required by law. The Court of Appeals affirmed the dismissal. Petitioner, who was appointed personal representative of the estate after the statute of limitations expired, contends the trial court should have permitted him to amend the complaint to name the personal representative as the real party in interest, with relation back of the amendment, thus allowing him to maintain the action. We agree that where the only change is a change in the representative capacity in which suit is brought, and there is no prejudice to the defendant, such an amendment is permitted by CR 15(c) and 17(a) and, accordingly, reverse.

FACTS
On June 1, 1989, Melissa Fernandez was killed by her estranged husband, Fernando, when she went to his apartment to get some of her family's belongings. At the time, Ms. Fernandez had a protective order against her husband. When she arrived at the apartment building, Melissa Fernandez was accompanied by her mother and brother. She went to a neighbor's apartment, from which they called 911. During the call they told the operator that Ms. Fernandez's husband was next door, and that he would not let her get her property out of the apartment. The operator asked if Ms. Fernandez had a court order authorizing her to take the property. She said no, and added that her husband beat her up the previous Sunday, went to jail, and was out on bail. She said he had been harassing her and threatening her, and she had been told in order not to break the no contact order she needed "a civil standby" to come out. CP at 117. Ms. Fernandez told the operator that she had heard Fernando had been seen with a gun, though she did not know for sure if he had one. She gave the operator Fernando's name and description when asked. She also said that Fernando had taken her welfare check from the mailbox that day. The operator told her that "we're going to send somebody there" and "[w]e'll get the police over there for you okay?" CP at 119. Ms. Fernandez said she would wait outside in front with her mom.
About 20 minutes later, Fernando approached the truck in which she was waiting and shot and killed Ms. Fernandez and then himself. By the time of the shootings, no police officer had been dispatched in response to the call for stand-by assistance.
On July 19, 1989, attorney Stephen Smith obtained an order appointing John Beal guardian ad litem for Ms. Fernandez's three minor children. The order authorized Beal to enter a contingency fee agreement with Smith to pursue the children's claims for personal injuries. In July, Smith obtained an order compelling release of 911 tapes and other materials, but declared he did not receive the court-ordered production until October 24, 1991. In August 1990, Smith filed a notice of claim with the City of Seattle on behalf of the children.
On June 1, 1992, exactly three years after Ms. Fernandez's death, he filed a wrongful death action against the City, naming her mother, brother, and Beal, as guardian ad litem of the children, as the plaintiffs, and claiming the City was negligent in not promptly dispatching a police officer to provide Ms. Fernandez with stand-by assistance. The complaint alleges that Beal was the personal representative of the estate of Ms. Fernandez.
At the time the complaint was filed, however, Beal had not been appointed personal representative. On September 3, 1992, Beal was appointed personal representative of the estate. The same day, Smith moved ex parte under CR 15(a) to amend the complaint to name Beal as a plaintiff in his capacity as personal representative. Smith declared that "[s]ubsequent to filing herein counsel for Plaintiff recognized the need for the complaint to be brought in the name of the Estate...." CP at 249. The motion was granted and an ex parte order entered authorizing amendment of the complaint. Smith filed an amended complaint the same day. The City answered the complaint in *240 October 1992, but did not challenge Beal's capacity as a plaintiff.
In May 1993, the City moved for summary judgment of dismissal, arguing that as a matter of law it was not liable. The motion was denied.
In August 1993, the City moved to vacate and dismiss the amended complaint. Beal conceded that it had been improper to move to amend ex parte under CR 15(a) and agreed the amended complaint should be vacated. He then moved to amend the complaint pursuant to CR 17(a), arguing that he was entitled as the real party in interest to have a reasonable period of time in which to ratify his prior actions taken as guardian ad litem to commence the action. Attorney Smith filed a declaration stating that he knew before the complaint was filed that the action could be brought only by the personal representative of the estate and knew that Beal had not been appointed personal representative, but he had not had time to prepare and file the necessary paperwork to have Beal appointed as personal representative before the statute of limitations ran on the wrongful death action.[1] This explanation contradicted his earlier declaration. In his briefing to this court, Smith acknowledges he knew before the complaint was filed of the need to name the personal representative.
The trial court denied the motion, reasoning that amendment was improper because there had been no honest or understandable mistake made in failing to name the personal representative of the estate as plaintiff. The court thereafter granted the City's motion for dismissal under CR 12(b)(6).
Beal appealed, arguing his motion to amend the complaint should have been granted and the amendment should have related back to the time of filing the original complaint; thus, dismissal of the action was improper. The City cross-appealed the denial of its motion for summary judgment on the liability issue. The Court of Appeals held the trial court properly denied the amendment and affirmed dismissal of the action. The court did not reach the issue raised by the City's cross-appeal. Beal v. Seattle, 83 Wash.App. 217, 920 P.2d 1235 (1996), review granted, 131 Wash.2d 1014, 936 P.2d 416 (1997).
Beal's petition for review was granted. A motion by the City to strike Beal's brief as overlong was denied by this court.

ANALYSIS

Motion to amend the complaint to name personal representative
A wrongful death action must be brought by the personal representative of the decedent's estate and cannot be maintained by the decedent's children or other survivors. RCW 4.20.020; Benton v. Associated Indem. Corp., 195 Wash. 446, 449, 81 P.2d 507 (1938). Here, Beal was appointed as guardian ad litem for Melissa Fernandez's children within two months of her death on June 1, 1989, and was authorized to retain attorney Smith to maintain a wrongful death action. The complaint in the action was filed three years to the day after Fernandez's death, the last day of the three year statute of limitations period. See RCW 4.16.080. However, when the complaint was filed, neither Beal nor anyone else had been appointed personal representative of the estate of the decedent. Thus, the action was not brought by the personal representative of the decedent's estate as required. Although the complaint did describe Beal as the personal representative, attorney Smith knew when the complaint was filed that Beal had not been appointed as personal representative and knew that the action had to be brought by the personal representative.
Although petitioner agrees that he was improperly named as a plaintiff by his ex parte CR 15(a) motion, he contends the trial court should have granted his motion to amend the complaint under CR 17(a).[2]
*241 CR 17(a) provides that every action shall be brought in the name of the real party in interest and states:
No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
Where a state rule parallels a federal rule, analysis of the federal rule may be looked to for guidance, though such analysis will be followed only if the reasoning is found to be persuasive. American Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank, 115 Wash.2d 307, 313, 796 P.2d 1276 (1990). CR 17(a) is identical to Fed.R.Civ.P. 17(a). The last sentence (with the relation back provision) was added to the federal rule by amendment in 1966. The Advisory Committee Note to the amendment states that the sentence was added
in the interests of justice.... [T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.
3A James Wm. Moore et al., Moore's Federal Practice § 17.01[8] (2d ed. 1996).
The Court of Appeals in this case also recognized a second purpose of the rule: to expedite litigation by not permitting technical or narrow constructions to interfere with the merits of legitimate controversies. Beal, 83 Wash.App. at 223, 920 P.2d 1235 (citing In re Estate of Crane, 9 Wash.App. 853, 856, 515 P.2d 552 (1973)); see also Rinke v. Johns-Manville Corp., 47 Wash.App. 222, 227, 734 P.2d 533 (1987); Fitch v. Johns-Manville Corp., 46 Wash.App. 867, 869, 733 P.2d 562 (1987).
The plain language of CR 17(a) supports Petitioner's position. However, as one commentator has noted, a literal interpretation of the last sentence of subsection (a) would make it applicable to every case where an inappropriate plaintiff had been named. 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1555 (2d ed. 1990). In accord with the purpose to avoid injustice, "it has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake has been made, then the last sentence of Rule 17(a) was not applicable and the action should be dismissed." 6A Wright et al., Federal Practice and Procedure § 1555; see Rinke, 47 Wash. App. at 228, 734 P.2d 533. The Court of Appeals in Rinke explained that this limitation is read into CR 17(a) to prevent plaintiffs from using the rule to join or substitute persons whose interests were not contemplated from the beginning of the action. Rinke, 47 Wash.App. at 230, 734 P.2d 533.
In this case, the Court of Appeals initially concluded that under CR 17(a) no mistake had been made at all. It then reasoned that where the failure to name the real party in interest occurred in the face of a clear understanding of who that party is, the trial court is well within its discretion in applying the standard developed in cases construing CR 15(c), and indeed should apply that standard. Beal, 83 Wash.App. at 225-26, 920 P.2d 1235. Where CR 15(c) is concerned, this court has held that if the plaintiff's delay in adding a party is due to inexcusable neglect, or a conscious decision, strategy or tactic joinder is not permitted. PUD of Klickitat County v. Walbrook Ins. Co., 115 Wash.2d 339, 349, 797 P.2d 504 (1990); North St. Ass'n v. City of Olympia, 96 Wash.2d 359, 368, 635 P.2d 721 (1981), disapproved on other grounds by, Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 815 P.2d 781 (1991).
The trial court and the Court of Appeals considered both rules in deciding the propriety of the amendment in this case. Therefore, in order to decide whether the motion *242 to amend should have been granted under CR 17(a), we will first consider petitioner's contention that the trial court and the Court of Appeals erroneously imported the standards for relation back of amendments pursuant to CR 15(c) to CR 17(a).
Petitioner argues that where addition or substitution of a party is concerned, CR 15(c) by its terms applies only to a change in defendants.
CR 15(c) provides:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by the amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
Contrary to petitioner's view, although its language is limited to a change in defendants, CR 15(c) applies by analogy in the case of newly added plaintiffs. Haberman v. Washington Pub. Power Supply Sys., 109 Wash.2d 107, 173, 744 P.2d 1032, 750 P.2d 254 (1988). The holding in Haberman follows from the federal Advisory Committee's Note to the 1966 amendment to Fed.R.Civ.P. 15(c), when the language concerning a change in parties was added, stating that the policy expressed in the rule applies by analogy to amendments changing plaintiffs. 3 James Wm. Moore et al., Moore's Federal Practice § 15.01[9] (2d ed. 1996); see id. § 15.15[4]; see generally Clif J. Shapiro, Note, Amendments that Add Plaintiffs Under Federal Rule of Civil Procedure 15(c), 50 Geo.Wash.L.Rev. 671 (1982). As noted in Haberman, once the notice and prejudice requirements of CR 15(c) have been satisfied, any amendment changing plaintiffs does not subvert the policies of the statute of limitations. Haberman, 109 Wash.2d at 173, 744 P.2d 1032 (citing North St. Ass'n, 96 Wash.2d at 368, 635 P.2d 721).
Additionally, the Advisory Committee Note to rule 15(c) indicates that federal Rules 15(c) and 17(a) are related. 3 Moore et al., Moore's Federal Practice § 15.01[9]. The rules are sometimes applied in tandem. 6A Wright et al., Federal Practice and Procedure § 1501; see, e.g., Holmes v. Pennsylvania New York Cent. Transp. Co., 48 F.R.D. 449 (N.D.Ind.1969); Corbin v. Blankenburg, 39 F.3d 650 (6th Cir.1994); cf. Calvert v. Tulsa Pub. Schools, Independent Sch. Dist. No. 1, 932 P.2d 1087 (Okla.1996) (under state versions of rules 15 and 17). Thus, while a motion to amend a complaint changing the capacity of the plaintiff may be resolved under CR 17(a), as in Fitch and Rinke, Haberman indicates the "inexcusable neglect" standard of CR 15(c) also applies where a change in plaintiffs is made. Accordingly, we find the Court of Appeals properly considered the standards set forth in CR 15(c).
Under CR 15(c), a change in plaintiffs should not be permitted if the defendant will be prejudiced in presenting a defense, nor where the defendant has no notice (actual or constructive) that the action would be brought against defendant if brought by the proper party. These requirements assure that statute of limitations purposes are not subverted, as indicated in Haberman. Where a change in the capacity of the plaintiff bringing suit is the only change, CR 15(c) requirements regarding notice and lack of prejudice are necessarily satisfied, provided that the complaint adequately sets out the claim. Here, for example, the same natural person serves two fiduciary roles, as guardian ad litem and as personal representative of the decedent's estate. The same claim is involved, and the beneficiaries, if the action is successful, remain the same. The City of Seattle will not suffer any prejudice in preparing a defense if the change in capacity is allowed, nor is there any doubt that notice was had that suit would be brought against the City if the proper party sued. Thus, *243 express requirements of CR 15(c) are satisfied.
Nevertheless, as the Court of Appeals concluded here, there was no honest or understandable mistake, in fact no mistake at all, because the determination of the real party in interest was not difficult and indeed plaintiff's counsel actually knew who the proper party was before the complaint was filed. Beal, 83 Wash.App. at 225, 920 P.2d 1235. Counsel simply ran out of time to file the necessary paperwork to have Beal appointed before the statute of limitations ran. Id. at 224, 920 P.2d 1235. Thus, the issue for this court is whether the "inexcusable neglect" standard under CR 15(c) or the "honest or understandable mistake" standard under CR 17(a), or both, should be applied when the amendment involves only a change in representative capacity to maintain the action, as in this case.[3]
A number of federal courts have been lenient in allowing relation back of amendments to complaints reflecting a change in the capacity in which the plaintiff brings the action. Recently, such cases have often involved application of Fed.R.Civ.P. 15. See, e.g., Flores v. Cameron County, 92 F.3d 258 (5th Cir.1996) (survival action by mother of decedent originally brought in individual capacity; amendment of pleading allowed to permit change in capacity to that of personal representative of decedent's estate and change related back to date of filing of original complaint; appointment as personal representative occurred after statute of limitations ran); Longbottom v. Swaby, 397 F.2d 45 (5th Cir.1968) (relation back of amendment to date of original pleading allowed after statute of limitations ran where only change is in description of capacity in which plaintiff sues); Frankel v. Styer, 209 F.Supp. 509 (E.D.Pa.1962) (amendment of complaint in wrongful death action substituting plaintiff as administrator of estate for plaintiff as guardian ad litem of decedent's minor children did not change cause of action but was merely change of fiduciaries of persons in whose behalf action was brought; relation back of amendment allowed though appointment as administrator occurred after statute of limitations ran). In none of these cases was there any discussion of any mistake in identifying the proper party to bring the action. The Court of Appeals in this state has similarly applied the relation back provisions of CR 17(a) without discussing mistake or excusable neglect. Fitch, 46 Wash.App. at 869, 733 P.2d 562; see generally Jerald J. Director, Annotation, Amendment of Pleading to Add, Substitute, or Change Capacity of, Party Plaintiff as Relating Back to Date of Original Pleading, Under Rule 15(c) of Federal Rules of Civil Procedure, so as to Avoid Bar of Limitations, 12 A.L.R. Fed. 233, § 9 (1972). The relevant inquiry has been whether defendant was prejudiced.
Other courts have explicitly found that application of the "inexcusable neglect" or "honest mistake" standards to a mere change in capacity is the kind of technical bar to a legitimate claim which CR 17(a) is designed to avoid. In similar cases, the Oklahoma courts have reasoned that the administrative requirements for filing a wrongful death action should not override the substantive right of recovery of the potential beneficiaries, and, particularly where the parties have remained the same, a substitution in the capacity of personal representative for individual capacity should be permitted under rule 17. Calvert, 932 P.2d at 1090; Weeks v. Cessna Aircraft Co., 895 P.2d 731 (Okla.Ct.App. 1994).
The purpose of CR 15(c), as mentioned earlier, is to permit amendment provided the defendant is not prejudiced and has notice. The purpose of CR 17(a) is to protect the defendant against a subsequent action by the party actually entitled to recover and to expedite litigation by not permitting technical or narrow constructions to interfere with the merits of legitimate controversies. Application of the "inexcusable neglect" or "honest mistake" standard to a change in representative capacity undermines the goals, as well as the literal language of the rules. Although we recognize the potential for abuse in a literal interpretation of CR 17(a) if applied in every circumstance, we *244 conclude that allowing an amendment where the only change is a change in the capacity (guardian ad litem as opposed to personal representative of the decedent's estate) in which the suit is brought, when there is no prejudice to the defendant, better meets the literal language of CR 17(a), as well as the purposes of CR 17(a) and CR 15(c).
Finally, on this point, the City argues that because only the personal representative of the estate can maintain this action, the failure to join the personal representative within the statute of limitations period means that the court lacks jurisdiction over the estate, citing Sutton v. Hirvonen, 113 Wash.2d 1, 775 P.2d 448 (1989) and Murray v. Joe Gerrick & Co., 172 Wash. 365, 20 P.2d 591 (1933). The argument appears to be that in the absence of jurisdiction within the statute of limitations period, any attempt to amend the complaint to add the personal representative after the limitations period ran could not confer jurisdiction on the court. In neither Sutton nor Murray is there any indication that any attempt was made to amend the pleadings to name the personal representative as plaintiff, and accordingly neither case addresses the argument the City advances here. The City's contention is inconsistent with the Court of Appeals' decisions in Rinke, 47 Wash.App. at 228, 734 P.2d 533, where appointment as personal representative and the amendment to the complaint occurred after the limitations period expired, and Fitch, 46 Wash.App. 867, 733 P.2d 562, where reappointment as personal representative and the motion to amend occurred after the limitations period expired.[4] Moreover, CR 17(a) by its terms states that ratification of commencement of the action "shall have the same effect as if the action had been commenced in the name of the real party in interest." Under this provision, we conclude that a court has jurisdiction over the estate if amendment is permitted under the rule.
In summary, we find that CR 17(a) and CR 15(c) do not bar amendment of the complaint and relation back in this case because the change is only in the representative capacity in which the suit is brought and the City is not prejudiced by the amendment.

Motion for Summary Judgment
Summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The City maintains that in general there is no duty in tort to protect another person from the criminal acts of a third party, and that the only duty the City owed was a public duty, the breach of which cannot support a negligence action.
Under the public duty doctrine, recovery from a municipal corporation in tort is possible only where plaintiff shows that the duty breached was owed to an individual, and was not the breach of a general obligation owed to the public in general, i.e., a duty owed to all is a duty owed to none. Taylor v. Stevens County, 111 Wash.2d 159, 163, 759 P.2d 447 (1988); Chambers-Castanes v. King County, 100 Wash.2d 275, 284, 669 P.2d 451, 39 A.L.R.4th 671 (1983). Liability may exist, however, where a relationship exists or has developed between the plaintiff and the municipality's agents giving rise to a duty to perform a mandated act for the benefit of a particular person or class of persons. Chambers-Castanes, 100 Wash.2d at 285, 669 P.2d 451. Such
[a] special relationship arises where (1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general *245 public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff.
Taylor, 111 Wash.2d at 166, 759 P.2d 447. Thus, an actionable duty to provide police services can arise if these requirements are met. Chambers-Castanes, 100 Wash.2d at 286, 669 P.2d 451.
The City maintains these requirements have not been met. The City contends that no express assurances were made, contrasting this case with Chambers-Castanes. In that case, 11 phone calls were made for police assistance within a 1-hour 20-minute period. The court concluded in Chambers-Castanes that explicit assurances of protection had been made.
Here, the following portion of the transcription of the 911 call contains the assurances relied upon:
911: Okay. Well I'll tell you what, we're going to send somebody there. Are you going to wait in number 4 [another apartment] until we get there?
CALLER: I'll be waiting outside in the front with my mom.
911: Okay. We'll get the police over there for you okay?
CALLER: Alright [sic], thanks.
CP at 119.
Contrary to the City's position, as in Chambers-Castanes express assurances were made that police would be dispatched to assist.
The City contends, however, that where the issue involves reliance by the plaintiff on assurances by a municipality's agent, the information relied upon must be incorrect or there is no cause of action, citing Meaney v. Dodd, 111 Wash.2d 174, 759 P.2d 455 (1988). In Meaney, the court overruled J & B Dev. Co. v. King County, 100 Wash.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1983) and held that in order to maintain an action based upon negligent issuance of a building permit, a direct inquiry must have been made by the plaintiff and incorrect information clearly set forth by the government. Meaney, 111 Wash.2d at 179-80, 759 P.2d 455. The City contends that under this holding in Meaney, in any set of circumstances the information must have been inaccurate at the time given. The City reasons that a prediction of future acts with no time requirements is not inaccurate information.
This reading of Meaney is too narrow, because a definite assurance of future acts could be given without a specific time frame, with the government then failing to carry out those acts. Meaney specifically involved information about building permit requirements, which either is or is not accurate at the time given. The same cannot be said about assurances that future acts will occur.
The City also argues that as to the reliance element, "it is clear" that decedent did not change her position for the worse as a result of what the 911 operator said. The City reasons she chose to be at her husband's apartment building, chose to wait outside, and chose to continue to wait. The City also contends there is insufficient evidence of reliance to withstand its summary judgment motion. However, the evidence and reasonable inferences from the evidence must be construed in the light most favorable to the nonmoving party. Magula v. Benton Franklin Title Co., 131 Wash.2d 171, 182, 930 P.2d 307 (1997). The fact that Ms. Fernandez told the operator she would wait in front of the apartment after being told the police would be sent gives rise to the inference she relied upon the assurance that police protection would be forthcoming. She neither left the apartment nor attempted to proceed without police assistance. Further, whether a party justifiably relies on information is a fact question generally not amenable to summary judgment. See, e.g., Swanson v. Liquid Air Corp., 118 Wash.2d 512, 518, 826 P.2d 664 (1992) (in context of wrongful discharge claim).
The City also reasons that no duty is articulable unless there is a duty to respond in a specific amount of time, and argues that as a matter of law a failure to respond within 22 minutes to a request for stand-by assistance is not a breach of duty. The City maintains that the only standard by which to measure the City's conduct is its average *246 response time for similar calls, about 29 minutes.
We can not agree that the City's duty can be defined only by its average response times. As the City concedes, the duty which arises in a case like Chambers-Castanes (and argued in this case) involves express assurances which the plaintiff relies upon and the government fails to fulfill. Thus, the duty is defined at least in part by the nature of the assurances given. If the operator had said, for example, "an officer will be there in five minutes," then it could not reasonably be argued that, based upon an average response time of 29 minutes, as a matter of law no duty had been breached if the officer arrived 28 minutes later.[5]
Finally, the City maintains that proximate cause is lacking as a matter of law for two reasons. First, the City contends, it cannot be said that "but for" the City's acts the murder would not have occurred because the murder could have occurred at any time. This argument can, of course, be made virtually any time liability for third party criminal acts is at issue. If the City had a duty to provide police protection and had satisfied that duty in this case, Ms. Fernandez might not have been murdered when she went to retrieve her family's belongings.
Second, the City contends that any connection between the City's acts and the murder is too remote to impose liability, and thus legal causation is lacking. The question of legal causation is a question of whether, as a matter of law, liability should attach given cause in fact, and involves considerations of logic, common sense, justice, policy and precedent. Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 756, 818 P.2d 1337 (1991). In light of Chambers-Castanes this question has already been decided against the City. That is, the court has already recognized that liability may be premised upon assurances of police protection, and causation found when a municipality breaches its duty to provide that protection and as a result plaintiff is injured by a third party's criminal acts. The City does not ask the court to overrule Chambers-Castanes nor does it explain how this case is distinguishable on the legal causation issue.
We hold that the trial court properly denied the City's motion for summary judgment on the issue of liability.
This matter is remanded to the trial court for further proceedings.
SMITH, GUY, JOHNSON, ALEXANDER and SANDERS, JJ., concur.
TALMADGE, Justice (dissenting).
Plaintiffs' counsel filed a complaint naming plaintiffs who had no standing to sue the defendant.[1] Rather than dismissing the case, the majority condones counsel's conduct and allows counsel to avoid the effect of a statute of limitation he missed by 94 days. More significant because of its impact on existing law, however, is the majority's treatment of the public duty doctrine. The majority makes municipalities insurers of all of the consequences of responses to 911 calls. I respectfully dissent.
A. Relation Back of the Amended Complaint
Although the majority opinion engages in a lengthy disquisition on the intricacies of the relation-back doctrine in CR 15(c) and 17(a), and of the interplay between the two rules to reach its conclusion, the central issue is whether we will apply statutes of limitation as they are written, or whether we will ignore them under the majority's new rule if there is a showing of no prejudice to the defendant.
Counsel for Beal did not make an honest, understandable or excusable mistake in failing *247 to have the personal representative of an estate pursue a wrongful death action as required by that statute. In fact, the conduct of counsel was dilatory and perhaps misleading to the trial court in suggesting a personal representative was appointed when, in fact, he failed to secure the appointment of John Beal as personal representative of the estate of Melissa Fernandez prior to the expiration of the statute of limitation for the wrongful death action. He also knew the appointment of the personal representative was required.[2] The Court of Appeals was entirely correct in determining there was no honest, understandable or excusable mistake, indeed there was no mistake at all, in Beal's counsel's failure to name the proper party here. Beal v. City of Seattle, 83 Wash.App. 217, 225, 920 P.2d 1235 (1996).
Numerous Washington cases hold an amendment to a pleading may relate back under CR 15(c) if the failure to name a proper party was due to excusable neglect. See CR 15(c); Haberman v. Washington Pub. Power Supply Sys., 109 Wash.2d 107, 173, 744 P.2d 1032, 750 P.2d 254 (1987). Similarly, in the context of CR 17(a) amendments, Washington courts have strongly suggested amendments to pleadings do not relate back unless the failure to name a proper party was an honest or understandable mistake. Rinke v. Johns-Manville Corp., 47 Wash.App. 222, 227, 734 P.2d 533, review denied, 108 Wash.2d 1026 (1987); Fitch v. Johns-Manville Corp., 46 Wash.App. 867, 869, 733 P.2d 562, review denied, 108 Wash.2d 1027 (1987).[3]
The Court of Appeals appropriately determined here the honest or excusable mistake standard applied in analyzing CR 17(a). However, the majority chooses to abolish this standard, holding the only appropriate consideration is prejudice to the defendant. Majority op. at 243. The majority asserts applying the current standard "undermines" the purpose of CR 17(a), which, the majority says, is to "protect the defendant against a subsequent action by the party actually entitled to recover and to expedite litigation by not permitting technical or narrow constructions to interfere with the merits of legitimate controversies." Id The majority lists only one purpose of CR 17(a). But the rule has other purposes. The Advisory Committee Notes to the Federal Rules of Civil Procedure, reprinted at 39 F.R.D. 69, 85 (1966), say about Fed.R.Civ.P. 17: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue [meaning the proper party to bring suit] is difficult or when an understandable mistake has been made." (Emphasis added.)
There was no difficulty in ascertaining the proper plaintiff here; the statute permitted only the personal representative to bring the wrongful death action. Nor was there an understandable mistake made; Beal was not appointed as personal representative in time to avoid the statute of limitation. As to the majority's argument that "technical or narrow constructions" should not prevent resolution of disputes on the merits, mere faithfulness to the effect of a statute of limitation is not a technical or narrow construction. I see no compelling reason to change the current standard. Insofar as the failure of plaintiffs' counsel properly to include the appointed personal representative, the amended complaint after the proper appointment of the personal representative does not relate back.
Ultimately, this is a statute of limitation case. The overlay of CR 15(c) and CR 17(a) is a mere fortuity that does not change the fact plaintiff's counsel did not file a proper lawsuit on time. When we consider the statute of limitation issue in this case, the correct conclusion emerges without difficulty. Suppose, as in this case, a statute of limitation runs on June 1, 1992, but a person does not *248 file a complaint until September 3, 1992. In opposition to a motion to dismiss the complaint as being time-barred, counsel argues variously that he just did not have time to file the case by June 1 ("Counsel simply ran out of time." Majority op. at 243), or, in the alternative, that he was not aware of the statute of limitation. I do not believe either of those explanations would deter any court for the briefest moment from dismissing the lawsuit for lack of timely filing.
The majority asserts the present case is different because in fact a lawsuit was filed on June 1, 1992. Thus, the majority argues, even though none of the named-party plaintiffs had standing to bring the suit, the suit put the City on notice it would have to defend itself. I know of no statute of limitation case, however, holding mere notice to a defendant a claimant intends to file a lawsuit excuses a late filing. Besides, the City knew long before June 1, 1992, there was a claim for wrongful death pending because counsel filed a notice of claim on behalf of the deceased's children in August 1990. If mere notice to the prospective defendant is the test, the plaintiffs could have filed years after August 1990, regardless of any statute of limitation. Notice to the defendant does not defeat the mandate of a statute of limitation.
What differentiates this case from the line of cases considering CR 17(a) is that on June 1, 1992, there was no person, legal or real, who qualified as a plaintiff to sue the City of Seattle, because the personal representative had not yet been appointed by court order. Thus, this was not a case where the personal representative could have filed the complaint on June 1 but did not because of inadvertence or unavailability. The personal representative did not even exist on June 1 and therefore could not have filed the lawsuit then under any circumstances.
The majority also argues there was no prejudice to the City. How does the majority know that? There was no evidentiary hearing below on the question of prejudice to the City. Like the notice argument, the no-prejudice argument would not suffice to excuse a late filing in a case governed solely by the statute of limitation, as plaintiffs could almost always make such an argument if their late filing were reasonably close to the statutory time limit. If lack of prejudice to the defendant is now an acceptable excuse for a late filing, trial courts will have to hold evidentiary hearings to determine the presence or absence of prejudice to the defendant(s) stemming from the late filing. We should not establish grounds for ancillary litigation to circumvent statutes of limitation.
Courts may, and often do, overlook violations of the Rules of Civil Procedure when no prejudice results from the violation. But the courts create and administer the Rules of Civil Procedure; they have the authority to grant relief from those rules as they deem appropriate. The Legislature, on the other hand, created the statute of limitation applicable in this case. Separation of powers concerns and appropriate respect for the enactments of a coordinate branch of government restrain us from weakening those enactments by creating judicial exceptions to them. It is the business of this Court to enforce the laws as the Legislature has written them, not to help litigants find ways around them.
The majority here announces a substantive rule of law that will apply in any statute of limitation dispute. The reasoning the majority employsnotice and lack of prejudiceto allow this case to survive cannot be limited to the peculiar circumstances of this case. The majority here gives further life to the ancient adage, hard cases make bad law.
B. Public Duty Doctrine
Given the majority's disposition of the procedural issue in this case, it then must reach the question of the public duty doctrine. In certain circumstances, where a person calling a law enforcement agency by a 911 number receives continuous assurances about assistance and justifiably relies on such assurances, the public duty doctrine does not apply and that individual states a cause of action against the municipality employing such 911 officers when the individual is harmed by criminal conduct. Chambers-Castanes v. King County, 100 Wash.2d 275, 669 P.2d 451 (1983); Noakes v. City of Seattle, 77 Wash.App. 694, 895 P.2d 842, review denied, 127 Wash.2d 1021, 904 P.2d 299 *249 (1995). In the present case, however, Melissa Fernandez made a non-emergency call to the Seattle 911 operators. She had already determined to remove property from her husband's apartment and was present in front of that apartment when her estranged husband shot her. There were no indications in the record of an emergency situation being present, there were no express assurances made by 911 operators that law enforcement officers would be arriving imminently, and there was certainly no change in behavior by Melissa Fernandez as a result of the 911 call. She decided to be at the apartment where the tragic events ensued.
The general purpose of the public duty doctrine, as articulated in Taylor v. Stevens County, 111 Wash.2d 159, 163, 759 P.2d 447 (1988), is to avoid making municipalities insurers for every harm that might befall members of the public interacting with such municipalities. The public duty doctrine has been seriously criticized. See, e.g., Jennifer Kay Marcus, Note, Washington's Special Relationship Exception to the Public Duty Doctrine, 64 WASH.L.REV. 401 (1989) (calling for abandonment of public duty doctrine and return to traditional tort analysis for determinations of governmental duty); John Cameron McMillan, Jr., Note, Government Liability and the Public Duty Doctrine, 32 VILL. L.REV. 505, 529 (1987) ("[T]he drastic social and economic changes that have taken place since the public duty doctrine's birth in the nineteenth century warrant that it follow the doctrine of sovereign immunity into the `dustheap of history.'"); 1 A.C. ANTITEAU, MUNICIPAL CORPORATION LAW § 11.74 & n. 3 (1986) ("good courts are increasingly repudiating [the public duty doctrine] used to continue tort irresponsibility of local governments"). Several states have abolished the doctrine.[4] Nevertheless, the public duty doctrine remains the law in Washington unless we are disposed to eliminate it in its entirety.
The majority's decision in this case makes a municipality operating a 911 telephone system an insurer of individuals who call 911 when serious harm follows making such a call. There is no principled limit to a municipality's liability if a third party does harm to an individual who makes a call to 911 operators and asks for assistance.
In effect, the majority determines a special relationship exception arises between a municipality and a member of the public calling for virtually any interactions between that individual and the municipality's staff. The majority simply goes too far in permitting the special relationship exception to swallow up the rule of the public duty doctrine. If we wish to eliminate the public duty doctrine in its entirety, we should say so. If we do not intend to do so, then we should apply the doctrine as it has previously been articulated in our case law.
I would affirm the Court of Appeals and the trial court and dismiss the plaintiff's complaint as not having been filed within the statutory time limits for wrongful death actions.
DURHAM, C.J., and DOLLIVER, J., concur.
NOTES
[1] Smith originally represented to the Court of Appeals that the caption of the original complaint listed Beal as personal representative, although it did not. He also maintained to the trial court that he properly described Beal in the allegations of the complaint as the personal representative of the estate as distinguished from the "duly appointed" personal representative. CP at 139.
[2] The City maintains that CR 17 does not apply in this case at all. The City contends that under this rule, one proper party may substitute for another, but the rule does not apply if there is only one proper party. The City cites no authority for this proposition and, thus, it is not properly before us. RAP 10.3(a)(5); Schmidt v. Cornerstone Inv., Inc., 115 Wash.2d 148, 166, 795 P.2d 1143 (1990). In any event, the language of the rule is not as limited as the City contends.
[3] There is no dispute here about whether attempted ratification of commencement of the action occurred within a reasonable time as required under CR 17(a).
[4] Some courts in other jurisdictions have held that where an action could be brought only by the personal representative of the estate, and a complaint was filed within the statute of limitations period but no personal representative was appointed until the statute of limitations had run, the original complaint was a nullity which did not invoke the jurisdiction of the court and the relation back doctrine could not be applied to avoid the bar of the statute of limitations. See McAdams v. Capitol Prods. Corp., 810 S.W.2d 290 (Texas Ct.App.1991); Hess v. Eddy, 689 F.2d 977 (11th Cir.1982) (applying Alabama law); Kiley v. Lubelsky, 315 F.Supp. 1025 (D.C.S.C.1970) (applying South Carolina law, but noting majority of courts in other jurisdictions hold otherwise). Other courts applying rule 17 have expressly rejected this view. See, e.g., Burcl v. North Carolina Baptist Hosp., Inc., 306 N.C. 214, 293 S.E.2d 85, 27 A.L.R.4th 182 (1982); Rennie v. Pozzi, 294 Or. 334, 656 P.2d 934 (1982).
[5] Of course, the trier of fact may ultimately conclude that the City acted reasonably in the circumstances by not dispatching an officer in the time period before Ms. Fernandez was killed, and therefore did not breach any duty owed to her. See generally Bodin v. Stanwood, 130 Wash.2d 726, 733, 927 P.2d 240 (1996) (in general, where potential negligence liability is at issue, a municipality's duty is to exercise reasonable care in the circumstances).
[1] Only the personal representative of a decedent's estate may bring a wrongful death action. RCW 4.20.020; Benton v. Associated Indent. Corp., 195 Wash. 446, 449, 81 P.2d 507 (1938).
[2] In his affidavit of September 3, 1992, Beal's counsel stated he was not aware of the statutory requirement for the personal representative to be the real party in interest in a wrongful death claim until after he had filed the lawsuit on June 1, 1992. He reversed himself in his subsequent affidavit of September 9, 1992, asserting that he did know of the requirement prior to June 1.
[3] The majority fails to note its holding overrules these Washington cases that have required the existence of some sort of mistake before allowing substitution or addition of plaintiffs under CR 17(a). Majority op. at 243.
[4] The following state cases have rejected the public duty doctrine: Adams v. State, 555 p.2d 235 (Alaska 1976) (abrogated the public duty doctrine in a negligent inspection case); Ryan v. State, 134 Ariz. 308, 656 P.2d 597 (1982) (abolishing the public duty doctrine in a negligent furnishment of police protection); Leake v. Cain, 720 P.2d 152 (Colo.1986) (abolishing the public duty doctrine in a negligent furnishment of police protection case); Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979) (abrogating the public duty doctrine in a highway case); Stewart v. Schmieder, 386 So.2d 1351 (La. 1980) (abolishing the doctrine in a construction case); Wilson v. Nepstad, 282 N.W.2d 664 (Iowa 1979) (abolishing the public duty doctrine in a negligent inspection case); Schear v. Board of County Comm'rs, 101 N.M. 671, 687 P.2d 728 (1984) (abolishing the public duty doctrine in a negligent furnishment of police protection case); Brennen v. City of Eugene, 285 Or. 401, 591 P.2d 719 (1979) (abolishing the public duty doctrine in the negligent issuance of a taxicab permit); Coffey v. City of Milwaukee, 74 Wis.2d 526, 247 N.W.2d 132 (1976) (abrogating the public duty doctrine in a negligent inspection case); DeWald v. State, 719 P.2d 643 (Wyo.1986) (abolishing the public duty doctrine in a negligent police pursuit case).