248

[No. 19011-1-III.   Division Three.   May 17, 2001.]

NORMA BRATTON, ET AL., *Respondents*, v. PETER WELP, ET AL., *Defendants*, SPOKANE COUNTY, *Petitioner*.

*D. Roger Reed* and *Aaron D. Goforth* (of *Reed & Giesa, P.S.*), for petitioner.

*Bradley J. Axtell* and *F. Dana Kelley* (of *Axtell & Briggs*), for respondents.

Schultheis, J. — Four family members sued Spokane County claiming that the County's 911 operator was negligent in failing to protect them from criminal activity. In January 1997 Peter Welp shot and seriously wounded Norma Bratton. She claims damages for personal injuries. It is also alleged that Ms. Bratton's husband, Steve Bratton, due in part to the stress of his wife's illness, died a

few days after the shooting in the hospital visitor's lounge. His estate seeks damages. Robert Bratton, the minor son of Norma and Steve Bratton, claims to have been injured because he was in the immediate area when his mother was shot and, therefore, suffered injury by witnessing the events. Jerry Brown is Norma Bratton's brother. He also claims that witnessing his sister's shooting caused compensable damages.

The Bratton family sued Mr. Welp, the City of Spokane, and Spokane County. The lawsuits against Mr. Welp and the City are not at issue in this appeal. The County filed a motion for summary judgment claiming that under the public duty doctrine, it owed no duty to the plaintiffs. The motion was granted. The plaintiffs filed a motion for reconsideration after which the trial court reversed its decision. The County appealed and this court granted discretionary review. Because we have determined that the public duty doctrine applies as a bar to the Bratton family's claims, summary judgment dismissal of the County was appropriate. As such, the trial court's order on reconsideration is reversed.

## FACTS

Escalating tensions between Mr. Welp and the Bratton family resulted in gunfire in a residential neighborhood of Spokane County on January 11, 1997. The shots fired by Mr. Welp seriously wounded Ms. Bratton. Mr. Brown witnessed the shooting while he was on the phone with the 911 operator reporting Mr. Welp's threat. He dropped the phone and tried to protect his sister from further gunfire by lying across her body. Shortly after the shooting, Ms. Bratton's husband and son arrived at the scene. Mr. Welp was arrested, charged, and subsequently found guilty of the crime and is currently serving his prison sentence.

The Bratton family filed a complaint for damages naming Mr. Welp and the City as codefendants. The complaint was later amended to include Spokane County. The basis of the

claim was that the City's police department and the County's 911/Crime Check operators were negligent and failed to exercise reasonable care in protecting the Bratton family from the criminal activity of Mr. Welp. The disputed claim, for summary judgment purposes, alleged that the County owed the Bratton family a duty to protect them because a special relationship existed between the Bratton family and the 911 operators. The Bratton family asserts that the special relationship arose as a result of the 911 operators' long-standing knowledge of Mr. Welp's violent tendencies as well as the express assurances that the police would be dispatched to provide assistance in the event that Mr. Welp threatened them.

The County's motion for summary judgment dismissal was initially granted. The Bratton family filed a motion for reconsideration and submitted the affidavit of Pam Charter for the court's consideration. Based on Ms. Charter's affidavit, the court then granted the motion for reconsideration and reversed its earlier decision. We granted the County's motion for discretionary review.

## DISCUSSION

The County contends the trial court erred when, on the Bratton family's motion for reconsideration, it reversed its decision to grant the County's motion for summary judgment dismissal. The court's determination that an issue of material fact existed regarding whether the County owed a duty of care to the Bratton family was based on the special relationship exception to the public duty doctrine.

■■ We review a trial court's decision on a motion for reconsideration for abuse of discretion. *Meridian Minerals Co. v. King County*, 61 Wn. App. 195, 203-04, 810 P.2d 31 (1991). A court's decision on a summary judgment motion is reviewed de novo. All facts are reviewed in the light most favorable to the nonmoving party. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990). Summary judgment is appropriate only if there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 897, 874 P.2d 142 (1994).

▓▓ The threshold determination in any negligence action is whether the defendant owes a duty of care to the plaintiff. *Torres v. City of Anacortes*, 97 Wn. App. 64, 73, 981 P.2d 891 (1999), *review denied*, 140 Wn.2d 1007 (2000). When the liability of a government entity is at issue, the public duty doctrine generally precludes liability for a public official's negligent conduct unless the duty breached was owed to the injured party individually rather than as a member of the public at large. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). This state recognizes four exceptions to the public duty doctrine. They include (1) the special relationship exception, (2) the failure to enforce exception, (3) the legislative intent exception, and (4) the rescue doctrine. *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257, 753 P.2d 523 (1987).

### 1. Norma Bratton's claim

Viewing the evidence in the light most favorable to the Bratton family, we must determine whether the trial court erred when it determined that a question of material fact existed regarding whether the County had a legal duty to protect Ms. Bratton from the harm she suffered. We believe the trial court erred.

▓▓ ▓▓ To support her claim, Ms. Bratton presented the affidavit of Ms. Charter, the 911 operator on duty the day of the shooting. Ms. Charter blamed herself for the tragedy suffered by the Bratton family. She states that on January 11, 1997, she "was aware that Norma Bratton and Jerry Brown had been threatened by their neighbor [Mr. Welp.]"[1] Ms. Charter implies that her failure to understand the seriousness of the situation was due to her taking a

---

[1] Clerk's Papers (CP) at 251-52.

prescription medication for extreme emotional and physical distress that affected her ability to function properly as a 911 operator.[2]

Ms. Charter's affidavit definitively states that Ms. Bratton had made prior calls to the 911 system referencing Mr. Welp's threats and violent tendencies. This information may create a question of fact regarding the privity element of the special relationship exception. The affidavit also states that mistakes were made in her handling of the emergency calls on the date in question. What Ms. Charter's affidavit lacks, however, is any mention that a 911 operator gave express assurances to any member of the Bratton family, at any time, that would lead a reasonable person to believe that help was on the way until after the shooting had already occurred.

The record discloses that Ms. Bratton initiated contact with the 911 system and police officers regarding Mr. Welp's actions on more than one occasion in the weeks leading up to the shooting incident. Sometime around Christmas 1996 Ms. Bratton called 911 to report that Mr. Welp had stolen a battery from her hospitalized mother's car. On January 4, 1997, Mr. Welp and Ms. Bratton got into a verbal and physical battle over a car parked on the street. During this altercation, Mr. Welp threatened to shoot Ms. Bratton and her entire family, and the police were once again summoned to Ms. Bratton's mother's house. After diffusing Mr. Welp's anger, a police officer informed Ms. Bratton that if Mr. Welp caused her family any more trouble the police would come back and arrest him. Ms. Bratton's mother died that same night.

Ms. Bratton and Mr. Brown organized and held an estate sale at their mother's home on January 11, 1997. Mr. Brown and his wife were helping customers when, from next door, Mr. Welp began to verbally assault Mr. Brown. Knowing that the police had informed the family that Mr. Welp would be arrested the next time he caused trouble, Mr. Brown

[2] CP at 252.

went into the house to call 911.

Ms. Charter was the operator who took Mr. Brown's call. She took down the information Mr. Brown relayed, then made the professional decision to classify the call, as a neighborhood disturbance. Apparently this is not a high priority call, so Ms. Charter transferred the call to Crime Check. Because no one immediately answered the call, Mr. Brown thought he had been disconnected and called the Crime Check number. Ms. Charter also answered Mr. Brown's Crime Check call. She again took down the information, but did not correctly input the address into the computer. Because there was no verification that Mr. Welp was in possession of a weapon at that time, Ms. Charter told Mr. Brown to stay away from Mr. Welp and call back if a weapon was seen.

About 20 minutes later Ms. Bratton arrived to assist with the estate sale. She and Mr. Welp began to argue so Mr. Brown went back into the house to call 911. As he spoke with the operator, Mr. Welp opened fire on Ms. Bratton in the front yard. Mr. Brown threw down the phone to go help his sister. His wife redialed 911 and gave the phone back to him. The operator then correctly input the address into the system and police and emergency vehicles were on the scene within minutes.

Based on her frequent contact with the 911 system in the weeks leading up to the shooting, Ms. Bratton claims the special relationship exception to the public duty doctrine imposed a duty on the County to assist and/or protect her from Mr. Welp's behavior. This exception has three requirements: (1) direct contact or privity between the public official and the injured plaintiff that sets the latter apart from the general public; (2) express assurances given by the public official; and (3) justifiable reliance by the plaintiff on those assurances. *Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 534, 871 P.2d 601 (1994). Implied assurances are not sufficient to create a governmental duty. *Honcoop v. State*, 111 Wn.2d 182, 192, 759 P.2d 1188 (1988).

The County argues that the special relationship excep-

tion does not apply to Ms. Bratton under the facts of this case. It asserts that none of the three required elements of the exception are present. It contends that because there was no direct contact between Ms. Bratton and the County's 911 operator on the day of the shooting there was no privity. Further, it argues that even if privity could somehow be established by Ms. Bratton's prior contacts with the 911 system, the operators did not make any express assurance to Ms. Bratton that she would be protected at a specific time and/or place on which she could have justifiably relied.

Under certain circumstances courts have held that the public duty doctrine does not act as a bar to claims of negligence. If a person calling for police assistance through the 911 system receives continuous assurances that help is on the way and that person relies on the assurances and is harmed by criminal conduct, a cause of action for negligence lies against the municipality employing the 911 operator because of the special relationship exception. *See Beal v. City of Seattle*, 134 Wn.2d 769, 954 P.2d 237 (1998); *Torres*, 97 Wn. App. at 76; *Noakes v. City of Seattle*, 77 Wn. App. 694, 895 P.2d 842 (1995).

In *Beal*, a negligence lawsuit was commenced against the city on the basis that the 911 operator failed to promptly dispatch a police officer to provide a woman with assistance after she had called for help. The woman was killed 20 minutes later by her estranged husband as she waited for the police to arrive. *Beal*, 134 Wn.2d at 773-74. The City's claim that it could not be held liable as a matter of law because of the public duty doctrine was rejected. Our Supreme Court determined that the evidence in the record presented genuine issues of material fact such that summary judgment dismissal of the City was not appropriate. It found that because the 911 operator made express assurances to the victim that the police would be dispatched to assist, the special relationship exception precluded application of the public duty doctrine. *Id.* at 785. The case was remanded for a jury trial.

The facts of this case are distinguishable from *Beal*

because Ms. Bratton did not speak with the 911 operator on the day of the shooting nor did she know that her brother had spoken with the operator just minutes prior to the shooting. As such, Ms. Bratton did not receive specific assurance that police officers would be sent to her deceased mother's home where the estate sale was being held in order to assist and/or protect her from Mr. Welp. Accordingly, there was no statement from a County representative on which Ms. Bratton could have justifiably relied.

In *Torres*, a domestic violence victim's estate sought damages from the city for wrongful death. The victim had complained to the police that her estranged husband had assaulted her with a gun. He fatally shot her a few weeks later. The victim's estate claimed that based on the City's investigation of the recent assault, the special relationship exception applied, imposing a duty to protect her. The superior court granted summary judgment in favor of the City but the decision was reversed by the Court of Appeals. The *Torres* court set forth some general rules that apply by analogy to the case at bar. It found that "[t]he relationship of police officer to citizen is too general to create an actionable duty. Courts generally agree that responding to a citizen's call for assistance is basic to police work and not special to a particular individual." *Torres*, 97 Wn. App. at 74. The court also found that

> [t]o hold that . . . routine responses to a report of violent crime amount[s] to an enforceable promise that "we will protect you" would dramatically increase the scope of the duty owed by municipalities to crime victims who have previously been in contact with the police.

*Id.* at 76.

The plaintiffs in *Noakes*, like the Bratton family, sought damages from the perpetrator of the crimes and the City for negligence in not responding to their 911 emergency request for assistance. The two developmentally disabled victims called 911 on three different occasions within a 9- to 11-minute period of time both before and as the perpetrator broke into their home and raped them. Each call ended with

the 911 operator telling the women that the police would be sent out, or sent as soon as possible. *Noakes*, 77 Wn. App. at 695-96. Although the trial court entered summary judgment in favor of the City based on the public duty doctrine, the appellate court reversed, finding that based on the record, genuine issues of material fact existed as to whether the 911 operators gave the victims express assurances of assistance and whether the victims justifiably relied on the assurances. *Id.* at 699-700.

Again, this case is distinguishable. Ms. Bratton did not speak directly to the 911 operator on the date in question. Accordingly, the operator had no opportunity to make any type of express assurances to her on which she could have relied. Even after review of the evidence from Ms. Bratton's prior telephone contact with the 911 system, there is no evidence that any County representative expressly assured Ms. Bratton that a police officer would immediately be dispatched to the scene if Mr. Welp became threatening at a future time. The only express assurances of assistance came from police officers on January 4, 1997.

Because the record does not contain any information regarding express assurances that the County would protect Ms. Bratton from Mr. Welp on the date of the shooting, her claim that the special relationship doctrine applies to create a duty upon the County to protect and/or assist her fails. As such, the public duty doctrine applies, which serves to bar her negligence claim against the County.

## 2. Jerry Brown's claim

During his initial call to the 911 system on the date of the shooting, Mr. Brown reported that he was being harassed by his next door neighbor, Mr. Welp. Mr. Brown did not say he had been threatened, just "harassed." More importantly, he did not tell the operator that Mr. Welp's violent tendencies were well known to the police and/or that he had been advised that the police would immediately respond to Mr. Welp's threats of violence. Mr. Brown merely told the

operator that after trying to pick a fight with him, Mr. Welp had gone into the house. As a result, Ms. Charter, the 911 operator, classified the call as a neighborhood disturbance and advised Mr. Brown to hang up and report the disturbance to the Crime Check number. He did so. It was during the phone conversation with the Crime Check officer (with Ms. Charter again acting as the operator) that Mr. Brown admitted that Mr. Welp had threatened to shoot him. However, when Ms. Charter asked whether Mr. Brown had seen Mr. Welp with a gun, Mr. Brown said he was not sure. Ms. Charter candidly admits in her affidavit that, because she was aware of Mr. Welp's history with the Bratton family, she should have classified the call as a threat and immediately dispatched police officers to the scene. Instead, she advised Mr. Brown to stay out of Mr. Welp's way and to call back if Mr. Welp made another threat. That is how the conversation ended. She made no promise of immediate assistance on which Mr. Brown could have relied.

When Ms. Bratton arrived a few minutes later, Mr. Brown heard Mr. Welp threaten to shoot his sister. Mr. Brown immediately went inside the house to call 911 as he was advised. It was during this conversation that the shots were fired. They were audible to the 911 operator, who immediately dispatched both the police and rescue units to the scene. The police and emergency personnel arrived within minutes to assist with Ms. Bratton's potentially life-threatening injuries.

Although the privity requirement is satisfied between Mr. Brown and the County, similar to the analysis for Ms. Bratton's claims, there was no express assurance from Ms. Charter that the County would protect Mr. Brown at a specific time and/or place. In fact, the County did exactly what it said it would do if Mr. Welp became physically threatening; it dispatched an officer to the scene. Just as in the above analysis, two elements of the special relationship exception to the public duty doctrine cannot be satisfied and the public duty doctrine applies as a bar to Mr. Brown's claims for damages.

### 3. The Steve Bratton Estate claim

■ The County also argues that the trial court erred when it determined that Steve Bratton's estate had a legal cause of action against the County. It claims there was no privity between Steve Bratton and the County that would make the special relationship exception applicable. It further argues that there was no legal nexus between Mr. Bratton's death and any action on the part of the County. We agree.

Mr. Bratton was not on the scene when the shooting occurred. Furthermore, there is no evidence in the record that Mr. Bratton had ever spoken to a 911 operator, either prior to or on the day of the shooting. Added to the lack of privity, the facts reveal that Mr. Bratton did not arrive on the scene until the shooting incident was over. He could not have relied on any express assurance from the County that it would protect him or his wife at a specific time and place. Finally, the County correctly points out that Mr. Bratton's death occurred several days after the shooting and the cause of death was determined to be accidental asphyxia from the inhalation of gastric contents into his lungs.

The estate's claim fails for two reasons. First, there is no evidence of cause in fact to sustain the claim. And, even if that were not the case, the public duty doctrine applies as a bar to the estate's claim. The trial court erred when it did not dismiss the estate's claim against the County.

### 4. Robert Bratton's claim

Robert Bratton, like his father, was not on the scene when the shooting occurred. The County raises the same issues here as it did with the estate regarding the applicability of the public duty doctrine as a bar to Robert's claim. The same analysis applies regarding the special relationship exception as was set forth above regarding the estate's claim. Robert Bratton's claim should have been dismissed on summary judgment.

260

## CONCLUSION

The public duty doctrine bars the claims of each of the plaintiffs under the facts of this case. The Bratton family is unable to provide evidence that all three elements of the special relationship exception exist as to each of the four plaintiffs. Admittedly, there is a question of fact regarding the privity element in Ms. Bratton's and Mr. Brown's claims. However, applying the facts of this case to the well-settled law of this state, we do not find that there was an express assurance of assistance/protection from the 911 operator on which any of the four plaintiffs could have justifiably relied.

Reversed.

BROWN, A.C.J., and KATO, J., concur.