34 P.3d 1243 (2001)
109 Wash.App. 299
Gerald A. SINKS and John S. Stocks, Appellants,
v.
Deputy RUSSELL and "Jane Doe" Russell, husband and wife; and Thurston County Sheriff's Office, a subdivision of Thurston County, Respondents.
No. 26646-6-II.
Court of Appeals of Washington, Division 2.
November 21, 2001.
*1244 Tyler K. Firkins, Attorney at Law, John Stocks, Attorney at Law, Auburn, Counsel for Appellants.
David V. Klumpp, Thurston County Dpty Pros Attorney, Olympia, Counsel for Respondents.
ARMSTRONG, C.J.
Nicholas Cencich shot and wounded John Stocks and Gerald Sinks when they tried to serve him with legal papers. A short time before Cencich shot them, a 911 operator and a deputy sheriff told Stocks and Sinks that the deputy would meet them at the scene to discuss an earlier confrontation with Cencich. But the deputy had not arrived when Cencich shot Stocks and Sinks approximately 20 minutes after the first call to 911. Stocks and Sinks sued Russell and the County for negligence. The trial court granted summary judgment for the defendants. We affirm, holding that Stocks and Sinks failed to establish that the deputy and the County owed a duty to protect them from the shooting.

FACTS
John Stocks and Gerald Sinks angered Nicholas Cencich by serving him legal papers. Cencich responded by blocking Stocks and Sinks in his driveway and threatening to call 911 and report them for trespassing. When Cencich left and they were able to get out of the driveway, Stocks and Sinks drove away and called 911 to tell their side of the story. Stocks told the 911 operator that Cencich was still at the scene. He said, "I'm pretty sure he doesn't have any weapons. I don't think he's dangerous. He's just angry." CP at 58. The 911 operator told appellants to stay at the scene and a deputy would contact them.
Deputy Russell soon called and Stocks told him that Cencich seemed angry and agitated. He said Cencich had driven his truck so close to Stocks that the bumper nearly touched his knees. Stocks did not tell Russell that he felt he was in danger, that Cencich was armed or dangerous, or that Cencich had threatened or previously harmed himself or Sinks. Russell said he would come out to take Cencich's statement and talk to him. He said he did not understand Stocks and Sinks' request as one for protection. Before Russell reached the scene, Cencich approached Stocks and Sinks' car and shot at them, nicking Stocks in the face and hitting Sinks in the stomach and elbow.
Stocks and Sinks appeal the trial court's order granting summary judgment to the County. They argue that if Russell had come faster or had not told them to wait at the scene, Cencich would not have shot them.

ANALYSIS
We review a summary judgment de novo. Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999). Summary judgment *1245 is proper if, viewing the facts in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Hertog, 138 Wash.2d at 275, 979 P.2d 400. A defendant is liable for negligence when he breaches a duty toward the plaintiff and the breach is the legal and actual cause of plaintiff's injuries. Hansen v. Friend, 118 Wash.2d 476, 479, 824 P.2d 483 (1992).
In any negligence action, the court must first determine whether the defendant owed a duty of care to the plaintiffs. Noakes v. City of Seattle, 77 Wash.App. 694, 697, 895 P.2d 842 (1995). In an action against the government, the plaintiff must show that the governmental agency owed a special duty of care to him. A governmental agency is not liable for the breach of a duty owed to the general public. Beal v. City of Seattle, 134 Wash.2d 769, 784, 954 P.2d 237 (1998). One way to show a special duty is to establish that a special relationship existed between the governmental agency and the plaintiff. Babcock v. Mason Co. Fire Dist. No. 6, 144 Wash.2d 774, 786, 30 P.3d 1261 (2001). A special relationship arises where
(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff.
Babcock, 144 Wash.2d at 786, 30 P.3d 1261 (citations omitted).
The defendants claim that they had no special relationship with Sinks and Stocks. Specifically, they claim that neither the 911 operator nor Deputy Russell gave Stocks and Sinks any express assurances that the deputy would provide protection. Sinks and Stocks argue that both the 911 operator and Deputy Russell said that the deputy would meet them at the scene. And, according to Sinks and Stocks, their initial reports to 911 and the deputy described the crimes of vehicular assault, false imprisonment, and negligent driving. Taken together, Sinks and Stocks contend that these amount to a promise of protection.
In Chambers-Castanes v. King County, 100 Wash.2d 275, 669 P.2d 451 (1983), the court found express assurances of protection where the victims, over the course of several hours, reported by telephone an ongoing assault, and the 911 operator repeatedly assured them that she had dispatched the police. Chambers-Castanes, 100 Wash.2d at 278-80, 287, 669 P.2d 451. The court held that this evidence was sufficient for the fact-finder to conclude that the governmental agency had given explicit assurances of protection. Chambers-Castanes, 100 Wash.2d at 286-87, 669 P.2d 451.
The court also found express assurances where a woman told 911 that her estranged husband had been violent in the past and asked for a civil standby while she collected some things from his apartment. Beal, 134 Wash.2d at 773-74, 954 P.2d 237. The 911 operator told her they would send someone out, but in fact dispatched no one. Beal, 134 Wash.2d at 774, 954 P.2d 237.
But a police department's "routine responses to a report of violent crime," such as suggesting and serving a protective order, are not express assurances. Torres v. City of Anacortes, 97 Wash.App. 64, 76, 981 P.2d 891 (1999). And a 911 operator does not give an express assurance by discussing a hostile incident with a participant and advising the caller to call back if threats resume. Bratton v. Welp, 106 Wash.App. 248, 23 P.3d 19 (2001).
Finally, the court has found no express assurance of protection where a firefighter told the victim not to attempt to remove his personal property because the firefighters would "take care of protecting [their] property." Babcock, 144 Wash.2d at 789, 791, 30 P.3d 1261.
Stocks stated that Deputy Russell told him to wait at the scene and that Russell was on the way and would be right out. Sinks' notes, taken just before the shooting, corroborate this,[1] as do the 911 transcript[2] and *1246 Deputy Russell's own affidavit.[3] Thus, the evidence is sufficient to show that the 911 dispatcher and Deputy Russell gave express assurances to Sinks and Stocks that Russell would be coming to the scene. And the evidence is sufficient to show that Stocks and Sinks reported a past incident that could have turned violent.
But Stocks and Sinks have not shown that they were requesting police protection for an ongoing violent attack or the immediate threat of one. In fact, Stocks and Sinks wanted an officer to come so that they could report their version of the encounter with Cencich and to perfect service on Cencich. Stocks and Sinks' call to 911 was made from a gas station some distance from the scene of the encounter. This further illustrates the critical distinction between this case and Chambers-Castanes and Beal.
We measure the promise to provide police protection by the nature of the incident the victim reported. Chambers-Castanes, 100 Wash.2d 275, 669 P.2d 451; Beal, 134 Wash.2d 769, 954 P.2d 237. In Chambers-Castanes, the victims reported an ongoing assault. In Beal, the victim reported a threat of immediate violence. In contrast, Stocks and Sinks, at best, reported a past threat of violence. Under these circumstances, the police promise to respond does not amount to the explicit assurance of protection that is necessary to show a special relationship.[4] We conclude that the trial court did not err in finding that the defendants owed no duty to Stocks and Sinks.
Accordingly, we affirm.
HOUGHTON and HUNT, JJ., concur.
NOTES
[1] "@ 11:15 call from Deputy Russell ... he's coming out." CP at 55.
[2] "D[ispatcher]. Okay. Well, we'll go ahead and uh, get a county deputy to contact you. C[aller]. Should I stay here? D[ispatcher]. Yes." CP at 58.
[3] "I told Mr. Stocks that I would be enroute." CP at 33.
[4] We hold today that a person does not have a special relationship with a law enforcement officer or agency unless the officer or agency gave express assurances of protection from an ongoing attack or the immediate threat of one. This holding is consistent with, but distinguishable from, the building code line of cases. These cases hold that a special relationship arises "where a public official charged with the responsibility to provide accurate information fails to correctly answer a specific inquiry from a plaintiff intended to benefit from the dissemination of the information." Taylor v. Stevens County, 111 Wash.2d 159, 171, 759 P.2d 447 (1988). See also Meaney v. Dodd, 111 Wash.2d 174, 759 P.2d 455 (1988).